# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ZACKERY D. LEWIS by his next friends;  :
RICHARD YOUNG; LYNN G. HAINER,  :
Administratrix of the Estate of ADDIE SMITH;  :
SUSAN W. COLEMAN; KATHY A. BURGER,  :     **CIVIL ACTION**
TRACY PALMER, KENNY ATKINSON by his  :     **NO. 06-3963**
next friend; BERNICE TATE by her next friend;  :
THE ARC COMMUNITY TRUST OF  :
PENNSYLVANIA; and THE FAMILY TRUST,  :
on their own behalf and on behalf of all other  :
persons similarly situated,  :
                                      **Plaintiffs**  :

                                          **v.**  :

EDWARD G. RENDELL, in his official capacity  :
as Governor of the Commonwealth of  :
Pennsylvania; ESTELLE B. RICHMAN, in her  :
official capacity as Secretary of the Department  :
of Public Welfare of the Commonwealth of  :
Pennsylvania; NORA DOWD EISENHOWER, in  :
her official capacity as Secretary of the  :
Department of Aging of the Commonwealth of  :
Pennsylvania; STEPHEN M. SCHMERIN, in his  :
official capacity as Secretary of the Department  :
of Labor and Industry of the Commonwealth of  :
Pennsylvania: CALVIN B. JOHNSON, in his  :
official capacity as Secretary of the Department  :
of Health of the Commonwealth of Pennsylvania;  :
GREGORY C. FAJT, in his official capacity as  :
Secretary of the Department of Revenue of the  :
Commonwealth of Pennsylvania; THOMAS  :
CORBETT, in his official capacity as Attorney  :
General of the Commonwealth of Pennsylvania;  :
ALVANIA MILLER, in her official capacity as  :
Executive Director of the Montgomery County  :
Assistance Office; CHUCK PHILLIPS, in his  :
official capacity as Executive Director of Erie  :
County Assistance Office,  :
                                    **Defendants.**  :

**DuBOIS, J.**                                                                       **AUGUST 3, 2007**

<u>MEMORANDUM</u>

**I.    INTRODUCTION**

"The Medicaid Act is an enormously complicated program.  The system is a web; a tug at one strand pulls on every other.  Given this complexity, there are untold ways in which a state plan might fail to comply with the Act and the governing regulations."  <u>West Virginia v. United States Dept. of Health and Human Services</u>, 289 F.3d 281, 294 (4th Cir. 2002) (quotations and brackets omitted).  In this putative class action brought pursuant to 42 U.S.C. § 1983, plaintiffs seek declaratory and injunctive relief to enjoin enforcement of Section 9 of Pennsylvania Act 42 of 2005, 62 P.S. § 1414 ("Section 1414").  Plaintiffs challenge Section 1414 as inconsistent with the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v ("Title XIX"), and violative of the Supremacy and Due Process clauses of the United States Constitution.  The issue in the case is this: does Section 1414 establish improper eligibility criteria for a special needs trust, a type of trust excluded in determining whether an individual's income and resources are sufficiently low to qualify for Medicaid?

Plaintiffs name the following defendants in their Amended Complaint: (1) Edward G. Rendell, in his official capacity as Governor of the Commonwealth of Pennsylvania; (2) Estelle B. Richman, in her official capacity as Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania; (3) Nora Dowd Eisenhower, in her official capacity as Secretary of the Department of Aging of the Commonwealth of Pennsylvania; (4) Stephen M. Schmerin, in his official capacity as Secretary of the Department of Labor and Industry of the Commonwealth of Pennsylvania; (5) Calvin B. Johnson, in his official capacity as Secretary of the Department of Health of the Commonwealth of Pennsylvania; (6) Gregory C. Fajt, in his official capacity as Secretary of the Department of Revenue of the Commonwealth of

Pennsylvania; (7) Thomas Corbett, in his official capacity as Attorney General of the Commonwealth of Pennsylvania; (8) Alavania Miller, in her official capacity as Executive Director of the Montgomery County Assistance Office; and (9) Chuck Phillips, in his official capacity as Executive Director of Erie County Assistance Office.

Currently before the Court are Attorney General Corbett's Motion to Dismiss Amended Complaint ("Attorney General's Motion to Dismiss") and the Motion to Dismiss Amended Complaint filed on behalf of every defendant except Attorney General Corbett ("Defendants' Motion to Dismiss").  The Court grants in part and denies in part the Attorney General's Motion to Dismiss, and grants in part and denies in part Defendants' Motion to Dismiss.  Specifically, the Court: (1) dismisses the Amended Complaint with prejudice as to all defendants other than defendants Richman and Phillips; (2) dismisses Counts XI and XII of the Amended Complaint, which allege substantive due process violations, with prejudice; and (3) dismisses plaintiffs' procedural due process claim pertaining to deprivation of Medicaid benefits as alleged in Count IX of the Amended Complaint with prejudice.  The Court denies the Attorney General's Motion to Dismiss and Defendants' Motion to Dismiss in all other respects.

## II.    BACKGROUND

### A.    Overview of Medicaid and Pennsylvania's Medical Assistance Program

The Medicaid Program, established by Title XIX, "is a cooperative federal-state program under which the federal government furnishes funding to states for the purpose of providing medical assistance to eligible low-income persons."  Pennsylvania Pharmacists Ass'n v. Houstoun, 283 F.3d 531, 533 (3d Cir. 2002) (citing 42 U.S.C. § 1396; Rite Aid of Pennsylvania, Inc. v. Houstoun, 171 F.3d 842, 845 (3d Cir. 1999)).  Although states are not required to

participate in the Medicaid program, "[i]f a state chooses to participate in the program, it must comply with the Medicaid Act and implementing regulations promulgated by the Secretary of Health and Human Services ('HHS')."  Id. (citing Wilder v. Virginia Hosp. Ass'n., 496 U.S. 498, 502 (1990)).  "Consequently, Medicaid is 'basically administered by each state within certain broad requirements and guidelines.'"  Johnson v. Guhl, 166 F. Supp. 2d 42, 46, aff'd 357 F.3d 403, 410 (3d Cir. 2004) (citing West Virginia Univ. Hosps. Inc. v. Casey, 885 F.2d 11, 15 (3d Cir. 1989)).  "Participating states must devise and implement a State Medical Assistance Plan (SMAP) that is approved by the Secretary of HHS."  Clark v. Richman, 339 F. Supp. 2d 631, 637 (M.D. Pa. 2004) (citing 42 U.S.C. § 1396; 42 C.F.R. § 430.10).

"Pennsylvania participates under Title XIX through its plan, the Medical Assistance (MA) program."  Clark, 339 F. Supp. 2d at 631.  "Under this program, the state and federal governments finance Medical Assistance to individuals whose resources are insufficient to cover the costs of their medical care."  Frederick L. v. Department of Public Welfare, 157 F. Supp. 2d 509, 513 n.4 (E.D. Pa. 2001) (citing Anderson v. Dept. of Pub. Welfare, 1 F. Supp. 2d 456, 459 n.1 (E.D. Pa. 1998)).  "Pennsylvania's Medical Assistance Program is administered by the" Department of Public Welfare ("DPW").  Id.

### B.      Special or Supplemental Needs Trusts ("SNTs")

In order to be financially eligible for Medical Assistance, a person must have income and resources below a threshold set forth by the Secretary of HHS.  42 U.S.C. § 1386a(a)(17).  "As background, § 1396p(d)(3) instructs states how to treat trusts for Medicaid eligibility purposes."  Johnson, 357 F.3d at 410.  Under § 1396p(d)(3), income and resources from trusts must generally be included in determining eligibility for medical assistance.

However, "property in a Supplemental Needs Trust is not considered in evaluating an applicant's resources . . . ." <u>Horowitz ex rel. Horowitz v. Apfel</u>, 143 F. Supp. 2d 240, 242 (E.D.N.Y. 2001), <u>aff'd</u> 29 Fed. App'x 749 (2d Cir. 2002).  "A supplemental needs trust is a 'discretionary trust established for the benefit of a person with severe and chronic or persistent disability' and is intended to provide for expenses that assistance programs such as Medicaid do not cover." <u>Horowitz v. Barnhart</u>, 29 Fed. App'x 749, 751 (2d. Cir. 2002) (citing <u>Sullivan v. County of Suffolk</u>, 174 F.3d 282, 284 (2d Cir.1999)).  Section § 1396p(d)(4)(A) sets forth the requirements for a special needs trust.

> This section provides that disabled persons under the age of 65 remain eligible for ongoing Medicaid assistance (MA) in spite of funds or other property held in an SNT, and can use SNT funds as a supplement to enhance the quality of their lives. The disabled person remains eligible for MA so long as the SNT contains a pay-back trust provision, *i.e.,* a provision specifying that the total MA provided . . . will be paid back to the state after the beneficiaries' death from any funds remaining in the trust.

<u>Norwest Bank of North Dakota, N.A. v. Doth</u>, 159 F.3d 328, 330 (8th Cir. 1998).  Importantly, "§ 1396p(d)(4)(A) refers to the *eligibility* for Medicaid and provides that eligibility will not be affected by the existence of a supplemental needs trust." <u>Sullivan</u>, 1 F. Supp. 2d at190.

**C.     Section 1414**

Section 1414, the Pennsylvania state statute that plaintiffs challenge as unconstitutional and violative of the Medicaid Act, was enacted on July 7, 2005.  The statute provides, in relevant part, as follows:

> (b) A special needs trust shall comply with all of the following:

> (1) The beneficiary shall be an individual under the age of sixty-five who is disabled, as that term is defined in Title XVI of the Social Security Act.

> (2) The beneficiary shall have special needs that will not be met without the trust.

(3) The trust shall provide:

(i) That all distributions from the trust must be for the sole benefit of the beneficiary.

(ii) That any expenditure from the trust must have a reasonable relationship to the needs of the beneficiary.

(iii) That, upon the death of the beneficiary or upon the earlier termination of the trust, the department and any other state that provided medical assistance to the beneficiary must be reimbursed from the funds remaining in the trust up to an amount equal to the total medical assistance paid on behalf of the beneficiary before any other claimant is paid: Provided, however, that in the case of an account in a pooled trust, the trust shall provide that no more than fifty percent of the amount remaining in the beneficiary's pooled trust account may be retained by the trust without any obligation to reimburse the department.

(4) The department, upon review of the trust, must determine that the trust conforms to the requirements of Title XIX of the Social Security Act, this section, any other State law and any regulations or statements of policy adopted by the department to implement this section.

(c) If at any time it appears that any of the requirements of subsection (b) are not satisfied or the trustee refuses without good cause to make payments from the trust for the special needs of the beneficiary and, provided that the department or any other public agency in this Commonwealth has a claim against trust property, the department or other public agency may petition the court for an order terminating the trust.

\* \* \*

(f) As used in this section, the following words and phrases shall have the following meanings:

"Pooled trust" means a trust subject to the act of December 9, 2002 (P.L. 1379, No. 168), known as the "Pooled Trust Act."

"Special needs" means those items, products or services not covered by the medical assistance program, insurance or other third-party liability source for which a beneficiary of a special needs trust or his parents are personally liable and that can be provided to the beneficiary to increase the beneficiary's quality of life and to assist in and are related to the treatment of the beneficiary's disability. The term may include medical expenses, dental expenses, nursing and custodial care, psychiatric/psychological services, recreational therapy, occupational therapy, physical therapy, vocational therapy, durable medical needs, prosthetic devices, special rehabilitative services or equipment, disability-related training, education, transportation and travel expenses, dietary needs and supplements, related insurance and other goods and services specified by the department. "Special needs trust" means a trust or an account in a pooled trust that is established in compliance with this section for a beneficiary who is an individual who is disabled, as such term is defined in Title XVI of the Social Security Act, as amended, consists of

assets of the individual and is established for the purpose or with the effect of establishing or maintaining the beneficiary's resource eligibility for medical assistance.

62 P.S. § 1414.

Plaintiffs allege that Section 1414 violates the Medicaid Act because it: (1) prohibits use of all remaindered assets to benefit other trust members; (2) prohibits certain disabled individuals from participating in a pooled special needs trust on the basis of age and special need criteria; and (3) restricts life-enhancing expenditures made by trusts on behalf of disabled individuals. Am. Compl. at 27-30.

## III.   STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing subject matter jurisdiction. Carpet Group Int'l v. Oriental Rug Imp. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Without jurisdiction the court cannot proceed at all in any case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

A challenge that "raises the issue of justiciability . . . implicates the subject matter jurisdiction of a federal district court. Therefore, a motion to dismiss . . . is properly brought under" Rule 12(b)(1). Kwan v. United States, 84 F. Supp. 2d 613, 617 (E.D. Pa. 2000). "Eleventh Amendment defenses [should also be] made pursuant to Rule 12(b)(1)." Smolow v. Hafer, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) (citing Blanciak v. Allegheny Ludlum Corp., 77 F. 3d 690, 694 n.2 (3d 1996)).

"A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject

matter jurisdiction, or contains defects in the jurisdictional allegations." Jiricko v. Bennett, Bricklin & Satlzburg, LLP, 321 F. Supp. 2d 636, 639 (E.D. Pa. 2004).   "In reviewing a facial attack, a court may rely on documents referenced within the complaint and attached thereto . . . ." Id. at 636 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." Ballentine v. United States, 486 F.3d. 806, 810 (3d Cir. 2007).

### B.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiffs.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); In re Merck & Co., Inc. Sec. Litig., 432 F.3d 261, 266 (3d Cir. 2005); Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).  Claims in a complaint will be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## IV.   DISCUSSION

### A.    Eleventh Amendment Immunity

The Attorney General's Motion to Dismiss argues that: (1) the Eleventh Amendment of the United States Constitution bars plaintiffs' claim against him; and (2) in his official capacity, he is not considered a "person" amenable to suit under Section 1983.  Att'y Gen.'s Mot. at 12-14. The Court concludes that under Ex parte Young, 209 U.S. 123 and its progeny: (1) the Eleventh

Amendment does not bar plaintiffs' suit; and (2) Attorney General Corbett is a "person" amenable to suit under Section 1983 in this case.

## 1.    Legal Standard

"The Eleventh Amendment bars a suit against state officials when the State is the real, substantial party in interest, regardless of whether the suit seeks damages or injunctive relief." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 89 (1984).  In Ex parte Young, 209 U.S. 123, the Supreme Court "recognized an important exception to this general rule: a suit challenging the federal constitutionality of a state official's action is not one against the State." Pennhurst, 465 U.S. at 89 (citing Young, 209 U.S. 123).  However, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury . . . ."  Edelman v. Jordan, 415 U.S. 651, 677 (1974).  An "award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment." Missouri v. Jenkins by Agyei, 491 U.S. 274, 279 (1989).

## 2.    Analysis

Plaintiffs' class action challenges the federal constitutionality of state officials' actions, and seeks only prospective injunctive relief and attorney's fees.  Specifically, the Amended Complaint requests the following relief:

1. DECLARING that 62 P.S. § 1414 violates Plaintiffs' rights under the Medicaid Act.

2. DECLARING that 62 P.S. § 1414 is preempted by the Medicaid Act and thereby violates the Supremacy Clause of Article VI of the United States Constitution.

3. DECLARING that 62 P.S. § 1414 deprives Plaintiffs of property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

9

4. DECLARING that Defendant Phillips' enforcement of 62 P.S. § 1414(3)(ii) to require trust expenditures to have a reasonable relationship to the "special needs" of the beneficiary, as "special needs " are defined by § 1414(f), and Defendant Richman's acceptance of this interpretation by county assistance offices, violate Plaintiffs' rights under the Medicaid Act and, because it is preempted by the Medicaid Act, also violates the Supremacy Clause of Article VI of the United States Constitution.

5. DECLARING that the application of the strictures of 62 P.S. § 1414 to trusts and trust accounts established before July 7, 2005 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

6. Permanently ENJOINING Defendants and their employees, designees, agents, and all other persons or entities in active concert or privity or participation with them from enforcing 62 P.S. § 1414.

7. AWARDING to Plaintiffs their costs, including reasonable attorneys' fees, as provided by 42 U.S.C. § 1988(b).

8. GRANTING to Plaintiffs such additional and further relief in law and equity as the Court may deem just and proper.

Amended Complaint, Prayer for Relief, at 45-46.

Under <u>Young</u>, 209 U.S. 123 and its progeny, the Eleventh Amendment does not bar the declaratory and injunctive relief sought by plaintiffs in this case.  Nor does the Eleventh Amendment bar plaintiffs from recovering reasonable attorneys' fees under 42 U.S.C. § 1988(b). <u>Artway v. Attorney General of State of New Jersey</u>, 81 F.3d 1235, 1249 (3d Cir. 1996) (noting "the Eleventh Amendment has no application to the award of attorneys fees under 42 U.S.C. § 1988").  Accordingly, the Court rejects Attorney General Corbett's argument that the Eleventh Amendment of the United States Constitution bars plaintiffs' claims.

Attorney General Corbett also argues that "in his official capacity [he] is not considered a 'person' amenable under Section 1983" because he "is synonymous with the State and fully immunized from this lawsuit."  Corbett Mot. at 14.  The Supreme Court case to which Attorney General Corbett cites, <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 n.10 (1989), states

"[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  Id. (citing Kentucky v. Graham, 473 U.S 159, 167 n.14 (1985); Ex parte Young, 209 U.S. at 159-160).  Accordingly, the Court rejects this argument.

**B.     Justiciability**

Defendants argue that this Court lacks subject matter jurisdiction over all defendants other than defendant Richman, the Secretary of Public Welfare, and defendant Phillips, the Executive Director of the Erie County Assistance Office.  Def.'s Mot. at 4-6; Att'y Gen.'s Mot. at 6-11.  Specifically, defendants argue that there is no "case or controversy" as to the other defendants.  The Court concludes that a case or controversy exists between plaintiffs and defendants Richman and Phillips, but no case or controversy exists between plaintiffs and any other defendants.

**1.     Legal Standard**

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"  DaimlerChrysler Corp. v. Cuno, 126 S.Ct. 1854, 1861 (2006) (citing Raines v. Byrd, 521 U.S. 811, 818 (1997)).  To determine "whether a particular declaratory-judgment action satisfies the case-or-controversy requirement" of Article III of the United States Constitution, a court must examine "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant' relief . . . ."[1]  MedImmune, Inc. v. Genentech, Inc., 127 S. Ct.

764, 766 (2007).

      "Where the plaintiff seeks a declaratory judgment with respect to the constitutionality of a

state statute, . . . there must be a 'real and immediate' threat of enforcement against the plaintiff."

Salvation Army v. Dep't of Comm. Affairs of State of N.J., 919 F.2d 183, 192 (3d Cir. 1990).

"General authority to enforce the laws of the state is not sufficient to make government officials

the proper parties to litigation challenging the law."  Id.  If courts were to allow plaintiffs

> to join the Commonwealth Officials . . . based on their general obligation to enforce the
> laws of the Commonwealth, we would quickly approach the nadir of the slippery slope;
> each state's high policy officials would be subject to defend every suit challenging the
> constitutionality of any state statute, no matter how attenuated his or her connection to it.
> Such a result is undesirable, a drain on resources of time and money, and contrary to
> Rode.

1st Westco Corp. v. Sch. Dist. of Philadelphia, 6 F.3d 108, 116 (3d Cir. 1993).  Accordingly,

plaintiffs "challenging the validity of a state statute may bring suit against the official who is

charged with the statute's enforcement only if the official has either enforced, or threatened to

enforce, the statute against the plaintiffs."  1st Westco, 6 F.3d at 113 (citing Rode v.

Dellarciprete, 845 F.2d 1195, 1209 n.9 (3d Cir. 1988)).  "If a complaint fails to allege . . . that

defendant state officers have ever taken or threatened to take any action with respect to a state

statute then there is no 'actual controversy' within the Declaratory Judgment Act, and there is 'no

---

[1] The statutory justiciability requirements of the Declaratory Judgment Act, 28 U.S.C. §
2201(a) are the same as those of Article III.  MedImmune, Inc., 127 S.Ct. 764, 771 (citing Aetna
Life Ins. Co. v. Haworth, 300 U.S. 227 (1937)) (noting that Aetna "explained that the phrase
'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are
justiciable under Article III").

case or controversy' within Article III."[2]  Shell Oil Co. v. Noel, 608 F.2d 208, 213 (1st Cir. 1979)

(cited by the Third Circuit in Rode, 845 F.2d at 1195 n.9).

>    2.    **Analysis**

>    a.    **Section 1414**

The Pennsylvania statute that plaintiffs challenge as unconstitutional provides, in relevant

part:

> If at any time it appears that any of the requirements of subsection (b) are not satisfied or the trustee refuses without good cause to make payments from the trust for the special needs of the beneficiary and, provided that the [Department of Welfare] or any other public agency in this Commonwealth has a claim against trust property, *the [Department of Welfare] or other public agency* may petition the court for an order terminating the trust.

62 P.S. § 1414 (emphasis added).

Assuming *arguendo* that Section 1414 charges every Pennsylvania agency with the

statute's enforcement, plaintiffs must still aver an actual threat of enforcement.  See 1st Westco,

6 F.3d at 113 (citing Rode v. Dellarciprete, 845 F.2d 1195, 1209 n.9 (3d Cir. 1988)).  That is,

Section 1414's provision that any "other public agency may petition the court for an order

terminating the trust" does not alone establish that a case or controversy exists between plaintiffs

and each of the named defendants.  "Such a result [would be] undesirable, a drain on resources of

---

[2] The requirement that a state officer threaten to enforce a statute is separate from and independent of the requirement that the defendant be charged with enforcement of the statute. See 1st Westco 845 F. 2d at 1209; Shell Oil, 508 F.2d at 213; see also Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992) (citing Ex parte Young, 209 U.S. 123 (1908)) (noting that "there must be a connection between the official sued and enforcement of the allegedly unconstitutional statute, *and* there must be a threat of enforcement" (emphasis added)).

time and money, and contrary to <u>Rode</u>."[3]  <u>Id.</u>

### b.   Named Defendants

The Court examines in turn whether a case and controversy exists between plaintiffs and defendants Rendell, Richman, Eisenhower, Schmerin, Johnson, Fajt, Corbett, Miller, and Phillips.

### i.   Defendant Edward G. Rendell

Plaintiffs aver in their Amended Complaint only that "Defendant Edward G. Rendell is the Governor of the Commonwealth of Pennsylvania.  In his official capacity, he is responsible for assuring the execution of all laws enacted by the Commonwealth. Pa. Const. art. 4, § 2. Defendant Rendell is sued in his official capacity."  Am. Complaint ¶ 15.

Under <u>1st Westco</u>, 6 F.3d at 113-16, the mere fact that Governor of Pennsylvania "is responsible for ensuring the execution of all laws enacted by the Commonwealth" is insufficient

---

[3] Plaintiffs argue extensively in their opposition that, under <u>Step-Saver Data Systems, Inc. v. Wyse Technology</u>, 912 F.2d 643, 646-47 (3d Cir. 1990), the language of Section 1414 establishes a case and controversy between plaintiffs and each of the defendants.  The Court disagrees.  The Third Circuit's decision in <u>Step-Saver</u>, 912 F.2d at 646-47 addressed "ripeness in the context of declaratory judgment actions . . . ."  <u>Id.</u> at 646.  An action must be ripe for a case or controversy to exist.  <u>Id.</u> at 646-47. As the Third Circuit explained in <u>NE Hub Partners, L.P. v. CNG Transmission Corp.</u>, 239 F.3d 333, 342 (3d Cir. 2001), "[i]n the context of declaratory judgments, we generally analyze ripeness under the threefold rubric of <u>Step-Saver</u> . . . : first, the adversity of the parties' interests; second, the probable conclusiveness of a judgment; third, the practical utility to the parties of rendering a judgment."

Defendants do not argue in their motions to dismiss that plaintiffs action is not ripe; rather, they argue that many of the named defendants are not proper parties to this action because they have neither enforced nor threatened to enforce Section 1414.  <u>Step-Saver</u> does not stand for the proposition that, if an action for declaratory judgment is ripe between a plaintiff and a proper defendant, all state officials with statutory authority to enforce a law are proper defendants.  For a defendant to be a proper party, a plaintiff must still establish that a case or controversy exists under the doctrine set forth in <u>Rode</u>, 845 F.2d 1195 and its progeny.

to establish that he has enforced or threatened to enforce Section 1414.  Accordingly, the Court

concludes that there is no case or controversy between plaintiffs and defendant Rendell.[4]

### ii.    Defendant Estelle B. Richman

With respect to defendant Richman, plaintiffs aver as follows in their Amended

Complaint:

> Defendant Estelle B. Richman is the Secretary of the [DPW]. In her official capacity she is responsible for administering Pennsylvania's Medicaid program . . . and for administering the program in a manner which is consistent with the Medicaid Act. . . . Secretary Richman is responsible for the promulgation of the rules and regulations of DPW pursuant to 71 P.S. § 1466.
>
> Secretary Richman is responsible for determining: that pooled trusts comply with the requirements of the Medicaid Act, with 62 P.S. § 1414, and  with "any other State law and any regulations or statements of policy adopted by the department to implement" section 1414, and whether to petition a court for an order terminating a pooled trust . . . . Secretary Richman has issued at least one formal statement of claim, demanding funds retained by Plaintiff ARC Community Trust from a trust account that had been established before the effective date of Section 1414.  The Department has since withdrawn its claim in that matter.  However, Plaintiffs are unaware of other claims the Department may have made and collected in other similar accounts. . . . She is sued in her official capacity.

Am. Complaint ¶¶ 16-17 (citations omitted)

_____

[4] Plaintiffs concede in their opposition that the Governor of Pennsylvania may not even have power to "petition the court for an order terminating the trust."  62 P.S. § 1414.  Plaintiffs state that

> all of the defendants named as parties, *with the possible exception of the Governor*, are officers of public agencies that provide services to the disabled in the Commonwealth. By virtue of these services, the agency will have a claim . . . for the cost of all such services provided.  As a result, each of these officers, by virtue of . . . their right . . . to petition the court to satisfy such claims, clearly are adverse to the Plaintiffs' interests.

Opp. at 6 (emphasis added).

The Court concludes that plaintiffs have adequately alleged that defendant Richman has taken or threatened to enforce Section 1414.  Specifically, plaintiffs allege that Secretary Richman has issued at least one formal statement of claim demanding funds retained by a plaintiff.  Accordingly, the Court concludes that a case or controversy exists between plaintiffs and defendant Richman.

### iii.      Defendant Nora Dowd Eisenhower

With respect to defendant Eisenhower, plaintiffs aver as follows in their Amended Complaint:

> Defendant Nora Dowd Eisenhower is the Secretary of the Department of Aging of the Commonwealth of Pennsylvania. In her official capacity she is responsible for administering Pennsylvania's community-based long-term care program in conjunction with the Department of Public Welfare and for other programs and services of the Department of Aging.  As the Secretary of a public agency, under section 1414 she is authorized to petition a court for an order terminating a special needs trust "[i]f it appears that" the trust does not satisfy a requirement of section 1414(b) and DPW or the Department of Aging "has a claim against trust property."  She is sued in her official capacity.

Am. Complaint ¶ 18 (citations omitted).

Under 1st Westco, 6 F.3d at 113-16, the mere fact that Defendant Eisenhower is authorized to petition a court for an order terminating a special needs trust is insufficient to establish that she has enforced or threatened to enforce Section 1414.  Accordingly, the Court concludes that there is no case or controversy between plaintiffs and defendant Eisenhower.

### iv.      Defendant Stephen M. Schmerin

With respect to defendant Schmerin, plaintiffs aver as follows in their Amended Complaint:

> Defendant Stephen M. Schmerin is the Secretary of the Department of Labor and Industry of the Commonwealth of Pennsylvania.  In his official capacity he is generally

16

> responsible for administering Pennsylvania's vocational rehabilitation services to assist disabled individuals to obtain employment.  As the Secretary of a public agency, under section 1414 he is authorized to petition a court for an order terminating a special needs trust "[i]f it appears that" the trust does not satisfy a requirement of section 1414 and DPW or the Department of Labor and Industry "has a claim against trust property."  He is sued in his official capacity.

Am. Complaint ¶ 19 (citations omitted).

For the same reasons set forth with respect to defendant Eisenhower, the Court concludes

that there is no case or controversy between plaintiffs and defendant Schmerin.

### v.      Defendant Calvin B. Johnson

With respect to defendant Johnson, plaintiffs aver as follows in their Amended

Complaint:

> Defendant Calvin B. Johnson is the Secretary of the Department of Health of the Commonwealth of Pennsylvania.  In his official capacity he is responsible for managing Pennsylvania's system for treatment and case management of drug and alcohol abuse and dependence, Pennsylvania Drug and Alcohol Abuse Act . . . and for billing individuals for reimbursement for Health Department funds expended on such services when authorized by Pennsylvania law.  As the Secretary of a public agency, under section 1414 he is authorized to petition a court for an order terminating a special needs trust "[i]f it appears that" the trust does not satisfy a requirement of section 1414(b) and DPW or the Department of Health "has a claim against trust property."  He is sued in his official capacity.

Am. Complaint ¶ 20 (citations omitted).

For the same reasons set forth with respect to defendant Eisenhower, the Court concludes

that there is no case or controversy between plaintiffs and defendant Johnson.

### vi.      Defendant Gregory C. Fajt

With respect to defendant Fajt, plaintiffs aver as follows in their Amended Complaint:

> Defendant Gregory C. Fajt is the Secretary of the Department of Revenue of the Commonwealth of Pennsylvania. In his official capacity he is the collection agent for the Commonwealth of Pennsylvania, and is responsible for collecting funds due the Commonwealth, including for reimbursement of the Commonwealth by individuals for

17

> mental health, mental retardation, or drug and alcohol treatment services, as authorized by law. As the Secretary of a public agency, under section 1414 he is authorized to petition a court for an order terminating a special needs trust "[i]f it appears that" the trust does not satisfy a requirement of section 1414(b) and DPW or the Department of Revenue "has a claim against trust property."  He is sued in his official capacity.

Am. Complaint ¶ 21 (citations omitted).

For the same reasons set forth with respect to defendant Eisenhower, the Court concludes that there is no case or controversy between plaintiffs and defendant Fajt.

### vii.    Defendant Thomas Corbett

With respect to defendant Thomas Corbett, plaintiffs aver as follows in their Amended Complaint:

> Defendant Tom Corbett is the Attorney General for the Commonwealth of Pennsylvania. In his official capacity he is responsible for collecting debts and accounts referred to his office, for representing the Commonwealth and its agencies in legal actions, and for reviewing the legality of proposed rules and regulations of Commonwealth agencies. Commonwealth Attorneys Act . . . . This includes debts and accounts, legal actions, and rules and regulations relating to section 1414.  He is sued in his official capacity.

Am. Complaint ¶ 22 (citations omitted).

In their opposition, plaintiffs advance the following arguments as to their assertion that a case or controversy exists between plaintiffs and defendant Corbett:

> Section 1414 provides: "'a pooled trust' means a trust subject to the act of December 9, 2002 (P.L. 1379, No. 168) known as the 'Pooled Trust Act.'" . . . Section 1965.5 of that Act provided: "the trustee [of the pooled trust] shall file an annual report with the Office of the Attorney General, along with an itemized statement which shows the funds collected for the year, income earned, salaries paid, other expenses incurred and the opening and final trust balances." In addition, Section 1965.7 provides: "The Office of the Attorney General shall make available information on the treatment of pooled trusts for persons with disabilities in the medical assistance program."  The inclusion of these provisions involving the Attorney General most likely arises from the long standing recognition of the special interest the Attorney General has in charitable trusts such as the pooled trusts involved here. Pennsylvania law long has recognized the Attorney General's common law right to maintain a suit to enforce the terms of a charitable trust.  This common law right has now been codified in Pennsylvania under The Uniform Trust Act .

. . . These provisions provide additional connections between the Attorney General and the controversy raised by the Plaintiffs.

Opp. at 7-8.

None of these facts pertain in any way to whether defendant Corbett has enforced or threatened to enforce Section 1414. In particular, the Court notes that plaintiffs do not allege in their Amended Complaint that defendant Corbett violated Section 1965.7 by failing to properly maintain annual reports or to make such information available. Accordingly, the Court concludes that there is no case or controversy between plaintiffs and defendant Corbett.

### viii.   Defendant Alvania Miller

With respect to defendant Alvania Miller, plaintiffs aver as follows in their

Amended Complaint:

> Defendant Alvania Miller is Executive Director of the Montgomery County Assistance Office. In her official capacity she is responsible for administering Pennsylvania's Medicaid program, including section 1414, in Montgomery County pursuant to Pennsylvania law, regulation, and policy. As the director of a public agency within the Commonwealth, under section 1414 she is authorized to petition a court for an order terminating a special needs trust "[i]f it appears that" the trust does not satisfy a requirement of section 1414(b) and DPW or the County Assistance Office "has a claim against trust property." She is sued in her official capacity.

Am. Complaint ¶ 23 (citations omitted).

For the same reasons set forth with respect to defendant Eisenhower, the Court concludes that there is no case or controversy between plaintiffs and defendant Miller.

### ix.   Defendant Chuck Phillips

With respect to defendant Chuck Phillips, plaintiffs aver as follows in their

Amended Complaint:

> Defendant Chuck Phillips is Executive Director of the Erie County Assistance Office. In his official capacity he is responsible for administering Pennsylvania's Medicaid

program, including section 1414, in Erie County pursuant to Pennsylvania law, regulation, and policy. As the director of a public agency within the Commonwealth, under section 1414 he is authorized to petition a court for an order terminating a special needs trust "[i]f it appears that" the trust does not satisfy a requirement of section 1414(b) and DPW or the County Assistance Office "has a claim against trust property." The Erie County Assistance Office has raised objections to at least two trust accounts under the auspices of Plaintiff The Family Trust, on the ground that the trusts do not comply with the requirements of section 1414 because they do not provide for payment to DPW upon the death of the beneficiaries or earlier termination of the trusts, and because they proposed that The Family Trust could expend monies for the trust on recreation, family visits, and other items that the Erie County Assistance Office did not consider "reasonably related to the disabilities of the disabled beneficiaries."

Am. Complaint ¶ 24 (citations omitted)

The Court concludes that plaintiffs have adequately alleged that defendant Phillips

threatened to enforce § 1414(b) against the plaintiffs. Specifically, plaintiffs allege that the "Erie

County Assistance Office has raised objections to at least two trust accounts . . . on the ground

that the trusts do not comply with the requirements of section 1414." Accordingly, the Court

concludes that a case or controversy exists between plaintiffs and defendant Phillips. See 1st

Westco, 6 F.3d at 113.

### C.    Cause of Action Under § 1983

In Counts I, III, V, and VII of the Amended Complaint, plaintiffs asserts that Section

1414 violates Title XIX. Defendants argue that the provisions of Title XIX upon which plaintiffs

rely do not confer a right enforceable under 42 U.S.C. § 1983. Def.'s Mot. at 7. The provisions

of Title XIX upon which plaintiffs rely are 42 U.S.C. §§ 1396p(d)(4), 1396d(a), and 1396a(a)(8),

(a)(10), and (a)(18). Complaint ¶ 3. The Court concludes that these provisions confer

enforceable rights under 42 U.S.C. § 1983. Accordingly, Defendants' Motion to Dismiss is

denied as to Counts I, III, V, and VII of the Amended Complaint.

20

1.      **Legal Standard**

"In legislation enacted pursuant to the spending power [such as Title XIX], the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 28 (1981).  Section 1983 "provides a cause of action for state deprivations of 'rights secured' by 'the laws' of the United States." Id. (citing Maine v. Thiboutot, 448 U.S. 1 (1980)).  "A plaintiff seeking § 1983 redress must assert the violation of a federal *right,* not merely of federal *law.*" Blessing v. Freestone, 520 U.S. 329, 329 (1997) (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989)).

> Three principal factors determine whether a statutory provision creates a privately enforceable right: (1) whether the plaintiff is an intended beneficiary of the statute; (2) whether the plaintiff's asserted interests are not so vague and amorphous as to be beyond the competence of the judiciary to enforce; and (3) whether the statute imposes a binding obligation on the State.[5]

Blessing, 520 U.S. at 329-330.

In Gonzaga University v. Doe, 536 U.S. 273, 282 (2002), the Supreme Court reiterated that nothing "less than an unambiguously conferred right is enforceable by § 1983."  The Supreme Court emphasized that "'rights creating' language [is] critical to showing the requisite congressional intent to create new rights . . . ." Gonzaga, 536 U.S. 287. "Accordingly, where the

---

[5]      Even if a plaintiff demonstrates such a right, however, there is only a rebuttable presumption that it is enforceable under § 1983.  Dismissal is proper if Congress specifically foreclosed a § 1983 remedy, either expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual § 1983 enforcement . . . .

Blessing, 520 U.S. at 330 (internal citations omitted).

text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."[6] Id. at 286.

### 2. Analysis

The Court concludes that 42 U.S.C. §§ 1396p(d)(4), 1396d(a), and 1396a(a)(8), 1396a(a)(10), and 1396a(a)(18) each confer rights enforceable under § 1983.  The Court first addresses Sections 1396d(a), 1396a(a)(8), and 1396a(a)(10), and then addresses Sections 1396a(a)(18) and 1396p(d)(4)(A).

### a. Sections 1396d(a), 1396a(a)(8), and 1396a(a)(10)

Sections 1396d(a) and 1396a(a)(10) provide "that a state 'must provide . . . medical assistance . . . to . . . all [eligible] individuals,' and includes intermediate care facilities in the definition of "medical assistance."  Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 189 (3d Cir. 2004) (brackets and omissions in original).  Section 1396a(a)(8) "declares that a state 'must provide . . . assistance . . . with reasonable promptness to all eligible individuals."  Id.

The Third Circuit has already concluded "[w]ithout difficulty" that 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(15), 1396a(a)(8) confer private rights vindicable through § 1983.  Sabree, 367 F.3d at 189.  Specifically, the Third Circuit held "that these provisions satisfy the Blessing Test because: (1) plaintiffs were the intended beneficiaries . . . ; (2) the rights sought to be enforced by them are specific and enumerated, not 'vague and amorphous'; and (3) the

---

[6] The Court rejected "the notion that our implied right of action cases are separate and distinct from our § 1983 cases. To the contrary, our implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983."  Gonzaga, 536 U.S. at 283.

obligation imposed on the states is unambiguous and binding." Id.  "To ensure that Congress unambiguously conferred the rights asserted," the Third Circuit further determined that "Congress used 'rights-creating terms.'" Id. at 189-92.

 Plaintiffs' claims turn upon whether Pennsylvania's restrictions on SNTs conflict with 42 U.S.C. § 1396(d)(4)[7] thereby interfering with eligible individuals' rights to medical assistance with reasonable promptness under sections 1396d(a), 1396a(a)(8), and 1396a(a)(10).  Thus, the rights afforded by these provisions are the rights that plaintiffs seek to enforce in this case.

   **b.**  **Sections 1396a(a)(18) and 1396p(d)(4)(A)**

    **i.**  **Section 1396a(a)(18)**

A court in this circuit has also concluded that "1396a(a)(18) . . . creates a federal right enforceable under § 1983."  Johnson v. Guhl, 91 F. Supp. 2d 754, 768-70 (D.N.J. 2000); see also Johnson v. Guhl,166 F. Supp. 2d 42, 45 (D.N.J. 2001), aff'd 357 F.3d 403 (3d Cir. 2004)).

> That provision mandates that "[a] State plan for medical assistance must . . . comply with the provisions of section 1396p of this title with respect to ... transfers of assets, and treatment of certain trusts . . ."  First, the specific purpose of this section is to assure state compliance with some federal standard of accounting for trusts and transfers of assets to determine eligibility.  This benefits those who would be eligible for benefits under § 1396p.  Because Plaintiffs contend that they would benefit from the State's compliance with § 1396p, they are part of the intended beneficiaries.  Second, § 1396a(a)(18) does not strain judicial competence for a court to review whether, and in what manner, certain assets were taken into account when determining an individual's eligibility for benefits.  Third, the language of this section contains mandatory rather than precatory terms.

Johnson, 91 F. Supp. 2d at 770.

Section 1396a(a)(18) mandates that "[a] State plan for medical assistance must . . . comply with the provisions of section 1396p of this title with respect to . . . transfers of assets,

---

   [7] Section 1396p(d)(4) addresses treatment of special needs trusts for purposes of determining eligibility for Medicaid.  See supra pages 5-6.

and treatment of certain trusts . . . ."  Again, plaintiffs' claims turn upon whether Pennsylvania's restrictions on SNTs conflict with 42 U.S.C. § 1396p(d)(4)(A), which addresses treatment of special needs trusts for purposes of determining eligibility for Medicaid.  Thus, the rights afforded by this provision are the rights that plaintiffs seek to enforce in this case.

### ii.      1396p(d)(4)(A)

This Court further concludes that 1396p(d)(4)(A) creates a federal right enforceable under § 1983.  Applying the <u>Blessing</u> test, the Court in <u>Johnson</u>, 91 F. Supp. 2d at 769-70 held that 42 U.S.C. § 1396p(c)(2)(D), provides a cause of action under § 1983.  That provision provides a hardship exception to the general rule that income and resources from trusts are included in the determination of financial eligibility for Medicaid.[8]  42 U.S.C. § 1396p(c)(2)(D). Similarly, in this case, "§ 1396p(d)(4)(A) refers to the *eligibility* for Medicaid and provides that eligibility will not be affected by the existence of a supplemental needs trust."  <u>Sullivan</u>, 1 F. Supp. 2d at 190; <u>see also</u> <u>Johnson</u>, 357 F.3d at 410 (noting that "§ 1396p(d)(3) instructs states how to treat trusts for Medicaid eligibility purposes") (emphasis added).  As in <u>Johnson</u>, 91 F. Supp. 2d at 770, "[b]ecause Plaintiffs contend that they would benefit from the State's compliance with § 1396p, they are part of the intended beneficiaries."  Thus, the Court concludes that § 1396p(d)(4)(A) creates a federal right enforceable under § 1983, and that this is a right plaintiffs seek to enforce

---

[8] Specifically, that provision provides as follows:

(c) Taking into account certain transfers of assets . . . (2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that . . . (D) the State determines, under procedures established by the State (in accordance with standards specified by the Secretary), that the denial of eligibility would work an undue hardship as determined on the basis of criteria established by the Secretary . . . .

<u>Johnson</u>, 91 F. Supp. 2d at 768 (citing 42 U.S.C. § 1396p(c)(2)(D)).

in this case.  See Johnson, 91 F. Supp. 2d at 769-70; see also Clark, 339 F. Supp. 2d at 638-40.

**D.     Due Process**

In Count IX, XI, and XII of the Amended Complaint, plaintiffs allege that Section 1414

violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[9]

The Due Process clause has both a substantive and a procedural dimension.  County of

Sacramento v. Lewis, 523 U.S. 833, 840 (1998).  The Court examines plaintiffs' substantive and

procedural due process claims in turn.[10]

**1.     Substantive Due Process**

In Counts XI and XII, plaintiffs assert that Section 1414 violates their substantive due

process rights because the statute applies retroactively and is arbitrary and irrational.  The Court

concludes that Section 1414 does not apply retroactively, and that prospective application of

Section 1414 meets the minimum rationality standard applicable to general economic and social

welfare legislation.  Accordingly, Defendants' Motion to Dismiss is granted as to Count XI and

XII of the Amended Complaint.

**a.     Legal Standard**

The constitutionality of "general economic and social welfare legislation " is scrutinized,

for substantive due process . . .  purposes, under the minimum rationality standard."  Knight v.

Tape, Inc., 935 F.2d 617, 627 (3d Cir. 1991).   "The test . . . is whether the law is rationally

---

[9]  The due process clause of the Fourteenth Amendment of the United States Constitution
provides "No State shall . . . deprive any person of life, liberty, or property, without due process
of law . . . ."  U.S. Const. amend. XIV, § 1.

[10]  Plaintiffs do not state in their Amended Complaint which counts allege substantive due
process violations and which counts allege procedural due process violations.  The Court
interprets Courts XI and XII as alleging substantive due process violations and Count IX as
alleging a procedural due process violation.

related to a legitimate state interest." Id.  "This is an extremely difficult standard for a plaintiff to meet." Stern v. Halligan, 158 F.3d 729, 731 (3d Cir. 1998) (citing Knight, 935 F.2d at 627).  "A court must uphold such measures if there is any 'conceivable' rational basis for the legislative scheme." Lindsey Coal Min. Co. v. Chater, 90 F.3d 688, 694 (3d Cir. 1996) (citing FCC v. Beach Communications Inc., 508 U.S. 307, 313 (1993)).  "[T]he law need not be in every respect logically consistent with its aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." Knight, 935 F.2d at 627 (citing Rogin v. Bensalem, 616 F.2d 680, 689 (3d Cir. 1980)).  The party "attempt[ing] to invalidate economic legislation on substantive due process grounds" bears the burden of proof.  Lindsey, 935 F.2d at 627.

"Although the [Supreme] Court has been hesitant to subject economic legislation to due process scrutiny as a general matter, this country's law has harbored a singular distrust of retroactive statutes, and that distrust is reflected in . . . due process jurisprudence." Eastern Enterprises v. Apfel, 524 U.S. 498, 502 (1998).  "[R]etroactive lawmaking is a particular concern because of the legislative temptation to use it as a means of retribution against unpopular groups or individuals . . . ." Id. (citing Landgraf v. USI Film Products, 511 U.S. 244, 266 (1994)). Nevertheless, as the Supreme Court has explained,

> Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches . . . .
>
> To be sure, . . . retroactive legislation does have to meet a burden not faced by legislation that has only future effects . . . . 'The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former' . . . . But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

United States v. Carlton, 512 U.S. 26, 30-31 (1994) (citing Pension Benefit Guaranty

Corporation v. R.A. Gray & Co., 467 U.S. 717, 733 (1984)).

      **b.**    **Analysis**

        **i.**    **Prospective Application of Section 1414**

      Plaintiffs can neither allege nor prove that prospective application of Section 1414 lacks

"any 'conceivable' rational basis . . . ."  On the contrary, Pennsylvania has a legitimate interest in

limiting use of scarce public resources–such as medical assistance benefits– to those who need to

apply those resources towards their "special needs."  See Schweiker v. Wilson, 450 U.S. 221,

238 (1981).  In Count XI, plaintiffs note that Section 1414 permits termination of pooled special

needs trusts, and not merely individual accounts within pooled special needs trusts.  Am.

Complaint ¶ 148.  Defendants concede that Section "1414 is phrased in terms of approving or

terminating the trust, and not individual accounts within the trust . . . ."  Def.'s Mot. at 16 n.7.  A

pooled trust is mainly used for people who do not have sufficient assets to establish a trust by

themselves.  They "pool" their resources with other disabled individuals, thereby garnering the

advantages that accompany a larger trust.  Am. Complaint ¶ 49.

      "[W]hen general economic and social welfare legislation is alleged to violate substantive

due process, . . . simple unfairness will not suffice to invalidate a law."  Stern v. Halligan,158

F.3d 729, 731 (3d Cir. 1998) (quotations omitted).  In this case, for an individual member to reap

the benefits of a pooled trust, all constituent members of the pool must adhere to Section 1414.

Whether or not this is fair, it is rationally based in Pennsylvania's legitimate interest in limiting

use of a scarce public resource.  See Schweiker, 450 U.S. at 238 ("This Court has granted a

strong presumption of constitutionality to legislation conferring monetary benefits . . . because it

believes that [the legislature] should have discretion in deciding how to expend necessarily

limited resources.   Awarding this type of [Medicaid benefit] inevitably involves the kind of line-

drawing that will leave some comparably needy person outside the favored circle."); see also

Mathews v. De Castro, 429 U.S. 181, 185 (1976).

Accordingly, the Court concludes that prospective application of Section 1414 is

rationally related to a legitimate state interest and does not violate plaintiffs' substantive due

process right under the Fourteenth Amendment of the United States Constitution.

### ii.        Retroactive Application of Section 1414

Plaintiffs allege in their Amended Complaint that Section 1414 "applies retroactively to

trusts established before [the statute's effective date of] July 7, 2005" because "Secretary

Richman has issued at least one formal statement of claim, demanding funds retained . . . from a

trust account that had been established before the effective date of section 1414."[11]  Am.

Complaint ¶¶ 17, 152.   Plaintiffs further argue that Section 1414 applies retroactively because it

does not contain the following provision, which is contained in the Pooled Trust Act, 62 P.S.

§ 1965.8 (repealed November 6, 2006): "This act shall apply to pooled trusts established on or

after the effective date of this act and to the accounts of individual beneficiaries established on or

after the effective date of this act in pooled trusts created before the effective date of this act."

The Court rejects these arguments.

This Court has the authority to construe whether Section 1414 applies retroactively in

---

[11] "The Department [of Public Welfare] has since withdrawn its claim in that matter."  Id.
¶ 17.  On January 12, 2007, the Department of Public Welfare sent a letter to plaintiffs' counsel
stating that "the Department will not apply Section 1414 to pooled trust accounts that were
funded before July 7, 2005 . . . ."  Ex. A to Def.'s Mot.

order to ascertain whether such application would violate the United States Constitution.  Under Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105 (1984), "consistent with the Eleventh Amendment, a federal court may not grant 'relief against state officials on the basis of state law, whether prospective or retroactive.'"  Smolow v. Hafer, 353 F. Supp. 2d 561, 569 (E.D. Pa. 2005) (citing Pennhurst, 465 U.S. at 106).   "Although Pennhurst prevents this Court from ordering relief on the basis of the [Section 1414] itself, it does not bar the Court from construing these provisions for the purposes of ruling upon their constitutionality under the U.S. Constitution."  Id.   As the Third Circuit explained in Everett v. Schramm, 772 F.2d 1114, 1119 (3d Cir. 1985), "[a]scertaining state law is a far cry from compelling state officials to comply with it . . . [T]he ascertainment of state law is an everyday function of the federal court . . . ."[12]

Under Pennsylvania law, "[a] statute is normally construed to operate prospectively." Borough of Jefferson Hills v. Jefferson Hills Police Dept. Wage and Policy Comm., 904 A.2d 61, 64 (Pa. Cmwlth. 2006).  "There is a presumption against the retroactive effect of statutes.  'No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.'"[13]  Commonwealth of Pennsylvania v. Estman, 915 A.2d 1191, 1193 (Pa.

---

[12] Other federal courts have specifically interpreted Everett to permit them to ascertain state law in order to rule on constitutional issues.  See Coalition of New Jersey Sportsmen v. Whitman, 44 F. Supp. 2d 666, 672 (D.N.J.1999) ("While the resolution of these constitutional issues necessarily requires this court to ascertain what state law means, this is a far cry from a prohibited [Pennhurst]-type action which seeks injunctive relief on the basis of state law.").

[13] The presumption under Pennsylvania law is similar to the federal presumption against retroactive effect of statutes.  See Perez v. Elwood, 294 F.3d 552, 558 (3d Cir. 2002) (citing Landgraf v. USI Film Products, 511 U.S. 244, 272-273 (1994)) ("If Congress does not clearly indicate its intention to apply a civil statute retroactively, courts apply a presumption against retroactive application."); see also Warren v. Folk, 886 A.2d 305, 308 (Pa. Super. 2005) (citing Landgraf, 511 U.S. 244, 272-273 (1994)).

2007) (citing 1 Pa. C.S. § 1926).  The language of Section 1414 does not suggest--let alone "clearly and manifestly" reveal--that the General Assembly intended the statute to apply retroactively.  See id. (noting that "[t]here is no provision in the Act regarding retroactive application").  Indeed, plaintiffs concede "that the statute is better interpreted as applying only to trusts established after its effective date."[14]  Opp. at 36.

Accordingly, the Court concludes that Section 1414 does not apply retroactively, and does not reach the question of whether retroactive application would violate plaintiffs' substantive due process rights under the Fourteenth Amendment of the United States Constitution.[15]

## 2.    Procedural Due Process

In Count IX, plaintiffs allege that Section 1414 violates their procedural due process rights.  Although plaintiffs allege that they have a property interest in their Medicaid benefits and in the assets placed in pooled special needs trust accounts, they do not specifically allege any infirmity in the procedures available to them prior to deprivation of these property interests.  The Court concludes that state and federal law provide plaintiffs with adequate procedures prior to deprivation of Medicaid benefits due to termination of special needs trust.  Accordingly, the

---

[14] "Plaintiffs submit, however, . . . that the statute can be read plausibly as applying retrospectively."  Opp. at 36.  Assuming arguendo that Section 1414 "can be read plausibly as applying retrospectively," this does not establish that the General Assembly clearly and manifestly intended Section 1414 to apply retroactively.

[15] Whether or not the Department of Public Welfare--or any other state agency--has or intends to improperly apply Section 1414 retroactively is irrelevant to the Court's inquiry. Pennhurst makes clear that the Court cannot enjoin state officers on the basis of state law.  Here, the Court is only construing Section 1414 to rule upon the statute's constitutionality.  See supra note 8.  The actions of the Department of Public Welfare do not bear upon whether the General Assembly clearly and manifestly intended Section 1414 to apply retroactively.

30

Court dismisses that portion of Count IX pertaining to deprivation of Medicaid benefits.  In contrast, the Court will not dismiss that portion of Count IX pertaining to deprivation of assets placed in pooled special needs trust accounts, as this allegation invokes issues not briefed by the parties.  The Court will revisit these issues at the summary judgment stage.

### a.    Legal Standard

"To state a claim . . . for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  "Due process requires that a deprivation of a property interest 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Gikas v. Washington School Dist., 328 F.3d 731, 738 (3d Cir. 2003) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)); see also Graham v. City of Philadelphia, 402 F.3d 139, 145 (3d Cir. 2005) (citing Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 16 (1978) ("The Supreme Court 'consistently has held that some kind of hearing is required at some time before a person is finally deprived of his property interests.'").

> Due process does not require a fixed set of procedures in all circumstances. Rather, what process is due depends upon the private interest that is affected, the risk of erroneous deprivation under current procedures, and the probable value, if any, of additional procedural safeguards. These factors must be weighed against the government's interest in expediency and the burden of additional procedural safeguards.

Jerrytone v. Musto, 167 Fed. App'x 295, 301 (3d Cir. 2006).

### b.    Analysis

31

i.    **Medicaid Benefits**

(1)    **Property Interest**

Plaintiffs assert that they "have a property interest in their Medicaid benefits."  Am.

Complaint ¶ 134.  The Court agrees.

Welfare "benefits are a matter of statutory entitlement for persons qualified to receive

them.  Their termination involves state action that adjudicates important rights."  Goldberg v.

Kelly, 397 U.S. 254, 261 (1970).  Accordingly, a procedural due process "challenge cannot be

answered by an argument that public assistance benefits are 'a 'privilege' and not a 'right.'"  Id.

(citing Shapiro v. Thompson, 394 U.S. 618, 627 n.6 (1969)).  It is well established that Medicaid

"beneficiaries do, in fact, have a constitutionally protected property interest in Medicaid

benefits."  Jonathan C. v. Hawkins, 2006 WL 3498494, 12 (E.D. Tex. Dec. 5, 2006) (citing Ladd

v. Thomas, 962 F. Supp. 284, 289 (D. Conn. 1997)); Easley v. Arkansas Dep't of Human Serv.,

645 F. Supp. 1535, 1545 (E.D. Ark. 1986)); see also Mundell v. Board of County Comm'rs of

Saguache County, 2005 WL 2124842, *4 (D. Colo. 2005) (citing Goldberg, 397 U.S. at 262).

The Third Circuit has recognized this property interest in the context of procedural due process

claims.  See Cospito v. Heckler, 742 F.2d 72, 81 (3d Cir. 1984) (discussing whether patients had

"actually been 'deprived' of the protectable property interest of being able to receive Medicaid

and Medicare").

Accordingly, the Court concludes that plaintiffs receiving Medicaid benefits have a

constitutionally protected property interests in those benefits.[16]

---

[16] In contrast, a court in this circuit has held that "Plaintiffs are not entitled to any
procedural safeguards with respect to a property interest for which they have never been deemed
qualified."  Johnson, 91 F. Supp. 2d at 772 (citing Goldberg, 397 U.S. at 262).

(2)      **Procedure**

Plaintiffs allege that, "if Plaintiffs' participation in special needs trusts are disapproved or the pooled special needs trust in which Plaintiffs have accounts are terminated, Plaintiffs are subject to loss of Medicaid benefits, to having to spend funds on care that would otherwise been covered by Medicaid . . . ."  Am. Complaint ¶ 136.

Under 42 U.S.C.A. § 1396a(a)(3), a "State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness . . . ."  Additionally, one of the implementing regulations directly addresses when hearings are required:

> (a) The State agency must grant an opportunity for a hearing to the following:
>
> (1) Any applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness.
>
> (2) Any recipient who requests it because he or she believes the agency has taken an action erroneously.

42 C.F.R. § 431.220.

In adherence to 42 U.S.C.A. § 1396a(a)(3), Pennsylvania's state plan for medical assistance provides as follows:

> Each county board shall hear and determine appeals from actions of its employees affecting the rights of those applying for or receiving assistance. Any person applying for

---

It is unclear whether from the Amended Complaint whether it alleges that plaintiffs who have never been deemed qualified for Medicaid also have a property interest in Medicaid benefits. See Am. Complaint ¶ 2 (including disabled individuals who "will become Medicaid recipients").  Because the Court ultimately concludes that 42 U.S.C.A. § 1396a(a)(3) and 62 P.S. § 23 provide plaintiffs with sufficient notice and opportunity for a hearing, this point is not critical.

or receiving assistance of any type covered by the public assistance provisions of the Federal Social Security Act, may appeal to the department from any decision of the county board, refusing or discontinuing his assistance, in whole or in part. In every such appeal, an opportunity for a fair hearing shall be granted, and the decision of the department on such appeal shall be final, except as otherwise hereinafter provided. All such appeals shall be in accordance with rules and regulations established by the department. If the appellant is already receiving assistance and requests a fair hearing within the timely notice period, assistance shall not be terminated until a decision is rendered in the hearing except in those appeals where the sole issue is one of State or Federal law or policy or change in State or Federal law or policy. In appeals where the sole issue is one of State or Federal law or policy or change in State or Federal law or policy, assistance shall be terminated when the decision is rendered by the county board of assistance. Assistance granted pending a fair hearing is subject to recovery by the department if the department action is sustained.

62 P.S. § 423

Upon denial of a claim for Medicaid assistance due to termination of a special needs trust pursuant Section 1414, 42 U.S.C.A. § 1396a(a)(3) and 62 P.S. § 23 provide plaintiffs with sufficient "notice and opportunity for a hearing appropriate to the nature of the case." Gikas, 328 F.3d at 738.  Importantly, Section 1414 does not modify 42 U.S.C.A. § 1396a(a)(3) and 62 P.S. § 423 in any way.  Accordingly, the Court concludes that Section 1414 does not deprive plaintiffs of their property interests in their Medicaid benefits in violation of their procedural due process rights.

### ii.    Assets in Special Needs Trusts and Pooled Trust Accounts

Plaintiffs assert that they "have a property interest in the assets to be placed in, or that have been placed in, pooled trust accounts of which they are beneficiaries."  Am. Complaint ¶ 135.  According to plaintiffs, "if Plaintiffs' participation in special needs trusts are disapproved or the pooled special needs trust in which Plaintiffs have accounts are terminated, Plaintiffs are subject . . . to the loss of up to 50 percent of the assets that were in Plaintiffs' pooled trust

accounts." Id. ¶ 136. Neither party has addressed in their submissions to the Court whether the "assets to be placed in . . . pooled trust accounts" are in fact property interests protected by procedural due process.

In contrast, Defendants' Motion to Dismiss briefly addresses the issue of whether Section 1414 provides an adequate procedure prior to termination of a pooled special needs trust. According to the defendants, the fact that a public agency must "petition the court for an order terminating the trust" satisfies procedural due process. Def.'s Opp. at 16. Defendants offer little authority to support this proposition, and plaintiffs have offered no reply to this argument.

On the present record, the Court concludes that it is inappropriate to dismiss that portion of Count IX pertaining to deprivation of assets placed in pooled special needs trust accounts. The Court will revisit these issues at the summary judgment stage.

### E.   Supremacy Clause

In Counts II, IV, II, and X of the Amended Complaint, plaintiffs allege that Section 1414 violates the Supremacy Clause of the United Sates Constitution.[17] Specifically, plaintiffs allege that Section 1414, a state statute, is preempted by the federal Medicaid Act.

The following passage from the Supreme Court's decision in Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103 (1989) constitutes the entirety of defendants' argument for

---

[17] The Supremacy Clause of the United State Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 2.

dismissal of Counts II, IV, II, and X of the Amended Complaint:

>  Given the variety of situations in which preemption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority.

Id. at 108.

Defendant fails to explain how this passage supports dismissal of these counts.  As the Supreme Court continued in Golden State Transit, "[c]onversely, the fact that a federal statute has preempted certain state action does not preclude the possibility that the same federal statute may create a federal right for which § 1983 provides a remedy."  Id.

On the present state of the record, the Court concludes that it is inappropriate to grant Defendants' Motion to Dismiss as to Counts II, IV, II, and X of the Amended Complaint.  The Court will revisit this issue at the summary judgment stage.

## V.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Attorney General's Motion to Dismiss, and grants in part and denies in part Defendants' Motion to Dismiss.

An appropriate order follows.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ZACKERY D. LEWIS by his next friends;          :
RICHARD YOUNG; LYNN G. HAINER,                 :
Administratrix of the Estate of ADDIE SMITH;   :
SUSAN W. COLEMAN; KATHY A. BURGER,             :          **CIVIL ACTION**
TRACY PALMER, KENNY ATKINSON by his            :          **NO. 06-3963**
next friend; BERNICE TATE by her next friend;  :
THE ARC COMMUNITY TRUST OF                     :
PENNSYLVANIA; and THE FAMILY TRUST,            :
on their own behalf and on behalf of all other :
persons similarly situated,                    :
                                               :
                 **Plaintiffs**                :
                                               :
                 **v.**                        :
                                               :
EDWARD G. RENDELL, in his official capacity    :
as Governor of the Commonwealth of             :
Pennsylvania; ESTELLE B. RICHMAN, in her       :
official capacity as Secretary of the Department :
of Public Welfare of the Commonwealth of       :
Pennsylvania; NORA DOWD EISENHOWER, in         :
her official capacity as Secretary of the      :
Department of Aging of the Commonwealth of     :
Pennsylvania; STEPHEN M. SCHMERIN, in his      :
official capacity as Secretary of the Department :
of Labor and Industry of the Commonwealth of   :
Pennsylvania: CALVIN B. JOHNSON, in his        :
official capacity as Secretary of the Department :
of Health of the Commonwealth of Pennsylvania; :
GREGORY C. FAJT, in his official capacity as   :
Secretary of the Department of Revenue of the  :
Commonwealth of Pennsylvania; THOMAS           :
CORBETT, in his official capacity as Attorney  :
General of the Commonwealth of Pennsylvania;   :
ALVANIA MILLER, in her official capacity as    :
Executive Director of the Montgomery County    :
Assistance Office; CHUCK PHILLIPS, in his      :
official capacity as Executive Director of Erie :
County Assistance Office,                      :
                                               :
                 **Defendants.**               :

37

**ORDER**

**AND NOW**, this 3rd day of August, 2007, upon consideration of Attorney General
Corbett's Motion to Dismiss Amended Complaint (Document No. 9, filed January 8, 2007); the
Motion to Dismiss Amended Complaint filed on behalf of every defendant except Attorney
General Corbett (Document No. 11, filed January 17, 2007); and Plaintiffs' Memorandum of
Law in Opposition to Defendants' Motion to Dismiss Amended Complaint (Document No. 17,
filed March 7, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED**
that Attorney General Corbett's Motion to Dismiss Amended Complaint (Document No. 9, filed
January 8, 2007) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. The Amended Complaint is **DISMISSED WITH PREJUDICE** as to defendant
   Corbett on the ground that there is no case or controversy between plaintiffs and
   defendant Corbett;

2. Attorney General Corbett's Motion to Dismiss Amended Complaint  is **DENIED**
   in all other respects.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Amended Complaint filed on
behalf of every defendant except Attorney General Corbett (Document No. 11, filed January 17,
2007) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. The Amended Complaint is **DISMISSED WITH PREJUDICE** as to defendants
   Edward G. Rendell, Nora Dowd Eisenhower, Stephen M. Schmerin, Calvin B.
   Johnson, and Gregory C. Fajt on the ground that there is no case or controversy
   between plaintiffs and these defendants.

2. The Motion to Dismiss Amended Complaint is **GRANTED** as to plaintiffs'

38

substantive due process claims asserted in Counts XI and XII of the Amended

Complaint.  Counts XI and XII of the Amended Complaint are **DISMISSED**

**WITH PREJUDICE**.

3.      The Motion to Dismiss Amended Complaint is **GRANTED** as to plaintiffs'

procedural due process claim relating to deprivation of Medicaid benefits asserted

in Count IX of the Amended Complaint.  That part of Count IX of the Amended

Complaint in which the procedural due process claim relating to deprivation of

medicaid benefits is asserted is **DISMISSED WITH PREJUDICE**.

4.      The Motion to Dismiss Amended Complaint is **DENIED** in all other respects.


**BY THE COURT:**


**/s/ JAN E. DUBOIS, J.**
_____
**JAN E. DUBOIS, J.**