**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

ZACKERY D. LEWIS by his next friends;       :          CIVIL ACTION
RICHARD YOUNG; LYNN G. HAINER,             :
Administratrix of the Estate of ADDIE       :
SMITH; SUSAN W. COLEMAN; KATHY             :
A. BURGER; TRACY PALMER; KENNY             :
ATKINSON by his next friend; BERNICE        :          NO.  06-3963
TATE by her next friend; MARY               :
WAGNER; MICHAEL BIDZILYA by his            :
next friend; WILLIAM ALGAR by his           :
next friend; ANTHONY GALE by his next       :
friends; THE ARC COMMUNITY                  :
TRUST OF PENNSYLVANIA; and THE              :
FAMILY TRUST, on their own behalf and       :
on behalf of all other persons similarly     :
situated,                                    :
          Plaintiffs,                        :
                                             :
          v.                                 :
                                             :
GARY ALEXANDER, in his official             :
capacity as Secretary of the Department of   :
Public Welfare of the Commonwealth of        :
Pennsylvania; ERIC ROLLINS, in his          :
official capacity as Executive Director of    :
the Erie County Assistance Office,           :
          Defendants.                        :

---

**DuBOIS, J.**                                              **August 22, 2011**


**M E M O R A N D U M**

**Table of Contents**

I.   Introduction…………………………………………………………...…...……..……3
II.  Background…………………………………………………………………..…….…..4
         A.  Procedural Background………………………………………………….……….4
         B.  Overview of Medicaid and Pennsylvania's Medical Assistance Program…....…..6
         C.  Special or Supplemental Needs Trusts…………………………………….……..6
         D.  62 Pa. Stat. Ann. § 1414 ("Section 1414")……………………...…...……8
III. Standing and Ripeness……………………………………………………...…….10

    A.  Standing…………………………………………………………..……10
        1.  Legal Standard ………….…………………….…………..……10
        2.  Discussion …………………………………………..….………12
    B.  Ripeness…………………………………………..…..………………18
        1.  Legal Standard ……………….…………………………..……18
        2.  Discussion ……………………………………………..…………20

IV. Standard of Review – Motion for Summary Judgment………………….……23
V.  Plaintiffs' Claims Under the Supremacy Clause………………………..…………24
VI. Preemption of Section 1414 by Federal Law…………………………………26
    A.  Defendants' Preliminary Arguments on Preemption…………………27
        1.  Defendants' Argument that Section 1414 is a Permissible Law Regulating State Trusts………………………………………………27
        2.  Defendants' Argument that 42 U.S.C. § 1396p(d)(4) is Not Mandatory……28
    B.  Plaintiffs' Preemption Arguments…………………………………29
        1.  Background of the No-More-Restrictive Rule…………………29
        2.  Whether the No-More-Restrictive Rule Applies in the Context of Section 1396p(d)(4) Special Needs Pooled Trusts………….………………30
        3.  Section 1414 is More Restrictive Than, and Conflicts with, Section 1396p(d)(4)……………………………………………………34
        4.  Summary – Preemption……………………………………….……42

VII. Plaintiffs' Motion for Class Certification………………………………………46
    A.  Legal Standard………………………………………………….…46
    B.  Discussion………………………………………………………48
        1.  Numerosity……………………………………..…………48
        2.  Commonality…………………………………………….....48
        3.  Typicality…………………………………………………....49
        4.  Adequacy………………………………..…………50
        5.  Requirements of Rule 23(b)(2)…………………………………53
        6.  Scope of the Proposed Class……………………..………54
        7.  Claims Subject to Class Treatment…………………………54
        8.  Appointment of Class Counsel……………………………….....55

VIII.  Conclusion…………………….…………………………...………55

## I.      INTRODUCTION

In this putative class action, plaintiffs challenge Section 9 of Pennsylvania Act 42 of 2005, 62 Pa. Stat. Ann. § 1414 (West 2010) ("Section 1414").  Plaintiffs allege that Section 1414 is inconsistent with the federal Medicaid Act and violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and their due process rights.  The issue in the case is this:  Does Section 1414 establish improper eligibility criteria for beneficiaries of pooled special needs trusts, a type of trust excluded in determining whether an individual's income and resources are sufficiently low to qualify for Medicaid?

The parties have stipulated to the relevant facts.  Presently before the Court are the parties' cross motions for summary judgment and plaintiff's motion for class certification.  For the reasons that follow the Court determines that plaintiffs have standing to challenge Section 1414, that their claims are ripe, and that subsections (b)(1), (b)(2), (b)(3)(ii), (b)(3)(iii), and (c) are preempted by federal law.  Additionally, the Court certifies a class composed of the following:

> All disabled individuals who are, or who will become, eligible for Medical Assistance and for whom pooled special needs trust accounts that comply in all respects with the federal Medicaid Act were established on or after January 1, 2000, or will be established in the future, but who have been or will be denied Medical Assistance, or who are subject to termination of their Medical Assistance benefits, as a result of the application of Section 1414, as well as trustees of pooled special needs trusts holding such accounts and other persons acting in a representative capacity on behalf of such disabled individuals.

**II.     BACKGROUND**

   A.     Procedural Background

This putative class action seeking declaratory and injunctive relief was commenced on September 5, 2006 with the filing of a complaint by The Family Trust, the ARC Community Trust (collectively "the trust plaintiffs), and eight individuals holding pooled trust accounts in The Family Trust or ARC Community Trust (collectively "the individual plaintiffs").   The Complaint challenged several provisions of Section 1414 as inconsistent with the federal Medicaid Act, the Supremacy Clause, and the Due Process Clause of the Fourteenth Amendment.  Named as defendants were nine Pennsylvania Commonwealth officials, including the Governor and the Secretary of Public Welfare.

Plaintiffs filed a First Amended Complaint on November 21, 2006.  Soon after that, on January 17, 2007, defendants moved to dismiss.  On February 13, 2007, while the motion to dismiss was pending, plaintiffs filed a motion to certify a class under Federal Rule of Civil Procedure 23(b)(2).  On August 3, 2007, this Court issued a Memorandum and Order granting Defendants' Motion to Dismiss in part and denying it in part.  Lewis v. Rendell, 501 F. Supp. 2d 671 (E.D. Pa. 2007).  Specifically, the Court ruled that the federal law governing special needs trusts, 42 U.S.C. § 1396p(d)(4) ("Section 1396p(d)(4)"), creates rights that are enforceable under 42 U.S.C. § 1983, id. at 686-88, and that Section 1414, which became effective July 7, 2005, does not apply retroactively.  Id. at 689-91.  The Court further concluded that prospective application of Section 1414, including the application of Section 1414(c) to terminate entire trusts, is rationally related to the state's legitimate interest in limiting the use of scarce state MA resources, and, as such, does not violate plaintiffs' substantive due process rights.  Accordingly,

the Court dismissed Counts XI and XII of plaintiffs' First Amended Complaint.[1]  Id.  The Court also dismissed that portion of Count IX that alleged Section 1414 violates plaintiffs' procedural due process rights by depriving them of Medicaid benefits without adequate procedural protections, concluding that state and federal law provide adequate procedures with respect to termination of Medicaid benefits.  Id. at 693.  Finally, the Court dismissed all defendants except Estelle Richman, in her official capacity as Secretary of the Department of Public Welfare ("DPW") and Chuck Phillips, in his official capacity as Executive Director of Erie County Assistance Office ("Erie CAO").[2]  Id. at 682-85.

On April 23, 2008, the parties filed a joint stipulation providing for a second amended complaint.  The Second Amended Complaint added four individual plaintiffs who established pooled trust accounts with either The Family Trust or ARC Community Trust after the effective date of Section 1414, July 7, 2005.[3]

The parties filed a joint stipulation of facts on May 9, 2008.  Plaintiffs filed a motion for summary judgment on July 10, 2008.  Defendants responded by filing a cross motion for summary judgment on August 14, 2008.  On June 30, 2010, the Court ordered the parties to

---

[1] In Count XI plaintiffs claimed that the termination of entire pooled trusts, permitted by Section 1414(c), violated their Fourteenth Amendment due process rights.  In Count XII, plaintiffs asserted a similar claim, contending that, because Section 1414 permits cancellation of entire trusts, it is inherently retroactive and that it fails to meet minimum due process requirements for retroactive economic legislation.

[2] Estelle Richman has since left the DPW, and has been replaced as a defendant by Gary Alexander, the current secretary of the DPW.  Likewise, Chuck Phillips has been replaced by Eric Rollins as Executive Director of the Erie CAO.  (See Pls.' Mot. for Summ. J. at 15-16.)

[3] Those plaintiffs are Mary Wagner, Michael Bidzilya (by next friend, Vincent Bidzilya), William Algar (by next friend, Sarah A. Kryeski), and Anthony Gale (by next friends, Antoinette Jenkins and Donna Bechtold).  (Second Am. Compl. ¶¶ 14(a)-(d).)

submit supplemental memoranda of law on the question "whether state Medicaid eligibility methodology must be 'no more restrictive' than federal Supplemental Social Security ("SSI") methodology in the context of 42 U.S.C. § 1396(p)(4)(d) trusts." Those memoranda have been filed, and the cross motions for summary judgment are now fully briefed and ripe for review. Plaintiffs' motion for class certification is also fully briefed and ripe for review.

> B.     Overview of Medicaid and Pennsylvania's Medical Assistance Program

The Medicaid program "is a cooperative federal-state program under which the federal government furnishes funding to states for the purpose of providing medical assistance to eligible low-income persons." Pa. Pharmacists Ass'n v. Houstoun, 283 F.3d 531, 533 (3d Cir. 2002) (citations omitted). Although states are not required to participate in the Medicaid program, "[i]f a state chooses to participate in the program, it must comply with the Medicaid Act and implementing regulations promulgated by the Secretary of Health and Human Services ('HHS')." Id. "Consequently, Medicaid is basically administered by each state within certain broad requirements and guidelines." Johnson v. Guhl, 166 F. Supp. 2d 42, 46 (D. N.J. 2001).

Pennsylvania participates in Medicaid by providing assistance to individuals whose resources are insufficient to cover the costs of their medical care through its plan, the Medical Assistance ("MA") program. See Frederick L. v. Dep't of Pub. Welfare, 157 F. Supp. 2d 509, 513 n.4 (E.D. Pa. 2001). Pennsylvania's MA program is administered by the DPW. Id.

> C.     Special or Supplemental Needs Trusts ("SNTs")

To be financially eligible for MA, a person must have income and resources below a threshold set by the Secretary of HHS. 42 U.S.C. § 1386a(a)(17). The treatment of trusts in this resource calculation is particularly complicated. As a general rule, trust assets are included in a

person's resources for determining MA eligibility.   See 42 U.S.C. § 1396p(d)(3).   However, Congress has created an exception to this resource counting rule for trusts – called variously special needs trusts, supplemental needs trusts, or SNTs – that are established for disabled individuals and meet certain requirements. Section 1396p(d)(4)(A) sets forth the requirements for a special needs trust.  "This section provides that disabled persons under the age of 65 remain eligible for ongoing Medicaid assistance (MA) in spite of funds or other property held in an SNT, and can use SNT funds as a supplement to enhance the quality of their lives."   Norwest Bank of N.D., N.A. v. Doth, 159 F.3d 328, 330 (8th Cir. 1998).

This case concerns a particular type of special needs trust known as a pooled special needs trust.  "A 'pooled trust' is a special arrangement with a non-profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust 'accounts' being maintained for each disabled individual."  Jan P. Myskowski, "Special Needs Trusts in the Era of the Uniform Trust Code," 46 N.H. Bar J. 16, 16 (2005).  The federal Medicaid Act establishes the following requirements for pooled special needs trusts:

> (i) The trust is established and managed by a non-profit association.
>
> (ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.
>
> (iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1614(a)(3)) [42 U.S.C. § 1382c(a)(3)] by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.
>
> (iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the

-7-

> trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this title [42 U.S.C. §§ 1396 et seq.].

42 U.S.C. § 1396p(d)(4)(C).

The primary benefit of pooled special needs trusts, as opposed to other trusts permitted under Section 1396p(d)(4), is that they allow disabled individuals to combine accounts, making it possible to create small trust accounts and reducing management fees compared to other types of trusts.  See Joseph A . Rosenberg, "Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest," 10 B.U. Pub. Int. L.J. 91, 128 (2000). Additionally, the non-profit organizations that run pooled special needs trusts can use funds left in a beneficiary's account after death – so called "remainders" – for the benefit of other pooled trust beneficiaries.  Id. at 128-29.

> D.    62 Pa. Stat. Ann. § 1414 ("Section 1414")

Plaintiffs contend that Section 1414 impermissibly establishes additional requirements for the exclusion of trust assets from the MA eligibility calculation and violates their federal statutory and constitutional rights.  That statute provides, in relevant part, as follows:

> (b) A special needs trust shall comply with all of the following:
>
> (1) The beneficiary shall be an individual under the age of sixty-five who is disabled, as that term is defined in Title XVI of the Social Security Act.
>
> (2) The beneficiary shall have special needs that will not be met without the trust.
>
> (3) The trust shall provide:
>
> > (i) That all distributions from the trust must be for the sole benefit of the beneficiary.

(ii) That any expenditure from the trust must have a reasonable relationship to the needs of the beneficiary.

(iii) That, upon the death of the beneficiary or upon the earlier termination of the trust, the department and any other state that provided medical assistance to the beneficiary must be reimbursed from the funds remaining in the trust up to an amount equal to the total medical assistance paid on behalf of the beneficiary before any other claimant is paid: Provided, however, That [sic] in the case of an account in a pooled trust, the trust shall provide that no more than fifty percent of the amount remaining in the beneficiary's pooled trust account may be retained by the trust without any obligation to reimburse the department.

(4) The department, upon review of the trust, must determine that the trust conforms to the requirements of Title XIX of the Social Security Act, this section, any other State law and any regulations or statements of policy adopted by the department to implement this section.

(c) If at any time it appears that any of the requirements of subsection (b) are not satisfied or the trustee refuses without good cause to make payments from the trust for the special needs of the beneficiary and, provided that the department or any other public agency in this Commonwealth has a claim against trust property, the department or other public agency may petition the court for an order terminating the trust.

62 Pa. Stat. Ann. § 1414.

It is plaintiffs' position that Section 1414 violates the Medicaid Act, the Supremacy Clause of the United States Constitution, and their due process rights under the Fourteenth Amendment. As a threshold matter, defendants argue that plaintiffs lack standing to challenge Section 1414 and that their challenges are not ripe. The Court will first address the standing and ripeness issues. It will then consider the cross motions for summary judgment and plaintiffs' motion for class certification.

## III.    STANDING AND RIPENESS

Defendants challenge both plaintiffs' standing to assert claims concerning Section 1414 and the ripeness of those claims. The Court will address the plaintiffs' standing first, and then turn to the ripeness of their challenges to the special needs and expenditure requirements of Section 1414.[4]    As explained below, the Court concludes that plaintiffs have standing to challenge Section 1414 and that their claims are ripe.

A.    Standing

1.   *Legal Standard – Standing*

Standing limits a plaintiff's ability to invoke the power of the federal courts. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Because the standing requirement is derived from Article III of the Constitution, it is a threshold inquiry in every case, one for which "[t]he party invoking federal jurisdiction bears the burden" of proof. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To meet this burden, the party invoking federal jurisdiction must establish "the irreducible constitutional minimum of standing," which is composed of three elements:

---

[4] The Court addresses the standing and ripeness of all of plaintiffs' claims except plaintiffs' procedural due process claim. In its August 7, 2007 Memorandum and Order, the Court dismissed plaintiffs' substantive due process claims (Counts XI and XII of the Amended Complaint). The Court also dismissed that portion of plaintiffs' procedural due process claim (Count IX) that related to deprivation of plaintiffs' Medicaid benefits. Lewis v. Rendell, 501 F. Supp. 2d 671, 675 (E.D. Pa. 2007). The Court deferred ruling on the portion of Count IX related to trust termination until the summary judgment stage because "this allegation invoke[d] issues not briefed by the parties." Id. at 691. The Court now determines that in light of its ruling that Section 1414(b) and (c) are preempted as violative of the Supremacy Clause and the federal Medicaid Act, see Section VI, infra, it is not necessary to reach the merits of plaintiffs' procedural due process claim. Thus the Court will not decide the ripeness and standing issues implicated by that claim.

> First, the plaintiff must have suffered "an injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (internal citations omitted).  Only one plaintiff is required to establish standing for a claim to proceed.  Massachusetts v. EPA, 549 U.S. 497, 506 (2007).

In addition to the constitutional requirements for standing, which address the question whether a court can exercise jurisdiction, courts look to prudential standing considerations to determine whether they should exercise jurisdiction.  The prudential standing considerations supplement the basic constitutional standing requirements and reflect the need for judicial restraint.  Mariana v. Fisher, 338 F.3d 189, 205 (3d Cir. 2003).  In Mariana, the Third Circuit articulated a three-part test for determining whether a party satisfies prudential standing:

> First, prudential standing requires that a litigant assert his or her own legal interests rather than those of a third party.  Second, courts refrain from adjudicating abstract questions of wide public significance amounting to generalized grievances.  Third, a plaintiff must demonstrate that his or her interests are arguably within the "zone of interests" that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

Id. at 205 (internal citations omitted) (citing Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cnty., 271 F.3d 140, 145 (3d Cir. 2001)).

Because this case concerns the constitutionality of a statute, the standing inquiry focuses on whether plaintiffs have standing to challenge each severable component of the statute:[5]

---

[5] For the Court's severability analysis, see Section VI(C), infra.

"'[C]ourts considering constitutional challenges to statutes often analyze standing problems in terms of the severability doctrine.'  The severability doctrine governs whether plaintiffs have standing to challenge an entire ordinance, or just certain provisions."   Lozano v. City of Hazleton, 620 F.3d 170, 181-82 (3d Cir. 2010) (vacated and remanded on other grounds by City of Hazleton v. Lozano __ U.S. __, 180 L. Ed. 2d 243 (2011)) (quoting Contractors Ass'n of E. Pa. v. City of Phila., 6 F.3d 990, 996 (3d Cir. 1993)).

The Court addresses both the constitutional and prudential standing requirements below, and concludes that plaintiffs meet both "the irreducible constitutional minimum of standing" under Lujan and the prudential standing requirements as articulated in Mariana to challenge each severable provision of Section 1414.

2.   *Discussion – Standing*

Plaintiffs challenge four aspects of Section 1414(b) and their application through Section 1414(c).  First, plaintiffs challenge the fifty-percent payback provision of Section 1414(b)(3)(iii). Plaintiffs contend that this provision, which caps at fifty percent the amount of funds left after a beneficiary's death that can be retained by a pooled trust without any obligation to reimburse the state for MA payments, conflicts with 42 U.S.C. § 1396p(d)(4)(C)(iv), which they contend permits a pooled trust to keep all such funds without any obligation to reimburse the state for MA.   Second, plaintiffs attack the 65-year age limit in Section 1414(b)(1), arguing that it conflicts with federal Medicare and SSI law.  Third, plaintiffs contest as conflicting with federal law Section 1414(b)(2) – "the special needs requirement" – which establishes as a precondition for establishing a special needs trust that the "beneficiary . . . have special needs that will not be met without the trust."   Finally, plaintiffs challenge two provisions of Section 1414 – "the

expenditure requirements" – which mandate that expenditures from the trust "must be for the sole benefit of the beneficiary" and "must have a reasonable relationship to the needs of the beneficiary."  62 Pa. Stat. Ann. § 1414(b)(3)(i) and (b)(3)(ii).  Because the Court concludes that the various provisions of Section 1414(b) are severable,[6] the Court will address plaintiffs' standing to challenge each of the individual provisions.  See Lozano, 620 F.3d at 181-82.

Defendants concede that plaintiffs have standing to challenge the fifty-percent payback requirement of Section 1414(b)(3)(iii) and that the claim is ripe for review.  (Defs.' Resp. to Pls.' Mot. for Class Certification at 19.)  Defendants also concede the standing and ripeness issues with respect to plaintiffs' challenge to the age-65 limitation in Section 1414(b)(1).  (Defs.' Resp. to Pls.' Mot. for Summ. J. at 11-12.)  Defendants contend, however, that plaintiffs lack standing for their remaining challenges to the expenditure and special needs requirements.  Defendants also contend that those claims are not yet ripe.

Defendants focus their constitutional standing arguments on the injury-in-fact prong.  Specifically, defendants contend that because the DPW has never attempted to enforce the special needs or expenditure requirements of Section 1414, plaintiffs cannot show an injury in fact.  Defendants' arguments are unavailing.

### i.   Injury in Fact – Expenditure Requirements

Section 1414(b)(3) requires that "all distributions from the trust must be for the sole benefit of the beneficiary" and "must have a reasonable relationship to the needs of the beneficiary."  62 Pa. Stat. Ann. § 1414(b)(3)(i), (ii).  The parties agree that the requirement that distributions "must have a reasonable relationship to the needs of the beneficiary" means that

---

[6] See Section VI(B), infra.

expenditures must fall within the definition of "special needs" as that term is defined in Section 1414(f).  (Pls.' Mot. for Summ. J. at 51; Defs.' Mot for Summ. J. at 28-29.)  In significant part, Section 1414(f) defines special needs as "items, products or services . . . [that] assist in and are related to the treatment of the beneficiary's disability."  62 Pa. Stat. Ann. § 1414(f) (emphasis added).  Plaintiffs contend that these requirements dramatically limit the purposes for which trust assets can be used and undermine Congress's intent in enacting Section 1396p(d)(4)(C) – that pooled trust assets be available for a variety of needs beyond the treatment of the beneficiary's disability.  Section 1396p(d)(4)(C) contains no such limitations on the purposes for which trust assets can be used.  Notably, the Secretary of the DPW has stated his intent to enforce these expenditure requirements against plaintiffs. (Stip. 61.)

The Court concludes that all three classes of plaintiffs – the trust plaintiffs, the individual plaintiffs who created pooled trust accounts before the effective date of Section 1414,[7] and the individual plaintiffs who created their pooled trust accounts after the effective date of Section 1414 – have suffered an injury in fact as a result of the expenditure requirements.

The purpose of pooled special needs trusts is to provide disabled persons with a financial resource that can be used for a variety of needs and managed inexpensively by pooling large numbers of accounts.  The expenditure requirements of Section 1414 undermine this Congressional intent by limiting the purposes for which trust assets can be used.  Most directly, the expenditure requirements subject individual plaintiffs whose trusts were created after the effective date of Section 1414 to the risk that they will lose their eligibility for MA if the DPW

---

[7] All of the individual plaintiffs in this case created their accounts after the January 1, 2000 effective date of the Foster Care Independence Act of 1999, Pub. L. 106-169.  For discussion of the relevance of this date, see Section VI(B), infra.

determines that distributions did not have a sufficient relationship to the treatment of the beneficiary's disability or were not made for the beneficiary's sole benefit as required under Section 1414.  Likewise, the trust plaintiffs run the risk of suits for breach of fiduciary duty if they fail to comply with these provisions.[8]  See Abbott Labs. v. Gardner, 387 U.S. 136, 154 (1967) ("[T]here is no question in the present case that petitioners have sufficient standing as plaintiffs: the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the . . . rule they are quite clearly exposed to the imposition of strong sanctions.").  Moreover, by significantly limiting the purposes for which trust assets can be used, the expenditure requirements threaten to eliminate the incentive to join pooled trusts and to minimize the utility of such trusts as a means of pooling investments.  These developments would harm individual plaintiffs – whether they created their accounts before or after the effective date of Section 1414 – by depriving them of the benefits of additional remainder income from which they might otherwise benefit under Section

---

[8] Defendants contend that plaintiff The Family Trust lacks standing to challenge Section 1414 because The Family Trust is not a valid special needs trust under federal law.  (Brief in Supp. of Defs.' Mot. for Summ. J. at 12 n. 2.)  Specifically, defendants contend that The Family Trust violated the "sole benefit" rule of § 1396p(d)(4)(C) by permitting a minor beneficiary to use pooled trust account money to help his parents purchase a home without obtaining a mortgage or other security interest in favor of the minor.   (Id.)  Defendants also contend that The Family Trust violated § 1396p(d)(4)(D) by making a $10,000 donation out of retained funds to a charity helping handicapped persons who were not pooled trust members.  (Id.)  Given the Court's conclusion that the other trust plaintiff, ARC Community Trust, and the individual plaintiffs who hold accounts therein have suffered an injury in fact due to the expenditure and special needs requirements, and therefore have standing to challenge those provisions of Section 1414, the Court need not reach the questions of whether The Family Trust is in compliance with federal law or whether any noncompliance impacts its standing.  Only one plaintiff is required to have standing for a claim to go forward.  Massachusetts v. EPA, 549 U.S. 497, 518 (2007).  However, for the reasons stated in Section XII(B)(4), infra, the Court concludes that the Family Trust and its account holders are not adequate representatives for class action purposes.

1396p(d)(4)(C)(iv)  and by frustrating the ability of pooled trusts to achieve economies of scale in investment and administration, resulting in higher fees.

The Court thus concludes that, given defendant DPW's stated intent to enforce the expenditure requirements, plaintiffs have met their burden of demonstrating an injury in fact arising out of the expenditure requirements.

ii. Injury in Fact – Special Needs Requirement

The special needs restriction of Section 1414 provides that "[t]he beneficiary shall have special needs that will not be met without the trust."  62 Pa. Stat. Ann. § 1414(b)(2).  The statute defines "special needs" as follows:

> "Special needs" means those items, products or services not covered by the medical assistance program, insurance or other third-party liability source for which a beneficiary of a special needs trust or his parents are personally liable and that can be provided to the beneficiary to increase the beneficiary's quality of life and to assist in and are related to the treatment of the beneficiary's disability. The term may include medical expenses, dental expenses, nursing and custodial care, psychiatric/psychological services, recreational therapy, occupational therapy, physical therapy, vocational therapy, durable medical needs, prosthetic devices, special rehabilitative services or equipment, disability-related training, education, transportation and travel expenses, dietary needs and supplements, related insurance and other goods and services specified by the department.

62 Pa. Stat. Ann. § 1414(f).

Plaintiffs contend that the special needs restriction and the definition of "special needs" unconstitutionally restrict eligibility to form a special needs trust and violate Section 1396(p). The Court determines that both the individual plaintiffs, regardless of whether their trusts were created before or after the effective date of Section 1414, and the trust plaintiffs can show an injury in fact based on this provision.  Critically, while the second sentence of the definition contains an arguably broad list of examples, the first sentence contains a requirement that the

-16-

special needs must be "related to the treatment of the beneficiary's disability" and "not covered by the medical assistance program, insurance or other third-party liability source." 62 Pa. Stat. Ann. § 1414(f). This requirement that the beneficiary have "special needs" stands in contrast to Section 1396p(d)(4)(C), which requires only that the beneficiary be disabled.

Although the DPW may eventually adopt a liberal interpretation of this language, "the constitutionality of a statute . . . may not be allowed to depend on the good faith or largess of the Commonwealth." Commonwealth v. Contakos, 455 Pa. 136, 142 (1974). As written, the special needs requirement subjects plaintiffs whose trusts were formed after the effective date of Section 1414 to the risk that they will be found not to have the requisite "special needs" and will lose their asset counting exclusion for their trust assets and thus also their eligibility for MA. The special needs requirement also has the effect of significantly limiting the persons eligible to form pooled trust accounts, which will result in a loss the loss of remainders that benefit both the trust plaintiffs and the individual account holders who formed their accounts both before and after the enactment of Section 1414.

Thus the Court finds that the injury-in-fact prong is satisfied for all plaintiffs with respect to the special needs requirement.

### iv.    Causal Connection and Redressability

The causal connection and redressabilty prongs of the constitutional standing inquiry are also met for the special needs and expenditure requirements. The injuries alleged by plaintiffs are a direct result of Section 1414 and its impending enforcement by defendants, and declaratory and injunctive relief would eliminate the risk of such injury. Thus, the Court finds that plaintiffs satisfy minimum constitutional requirements of standing.

-17-

v.      Prudential Standing

The prudential standing requirements, as explicated in <u>Mariana</u> are also met in this case. Both the individual and trust plaintiffs have personal interests in the governance of the trusts in which they are beneficiaries or trustees.  These parties are asserting their own rights rather than raising a generalized grievance.   Finally, plaintiffs' claims are within the zone of interest protected by the federal Medicaid Act and the Supremacy Clause.  This Court has ruled that 42 U.S.C. § 1396p(d)(4) creates a private right of action with respect to MA eligibility.  <u>Lewis</u>, 501 F. Supp. 2d at 685.  If, as plaintiffs contend, Section 1414 impermissibly infringes on those federally created rights, it violates federal law and plaintiffs are entitled to relief.

Thus, the Court concludes that plaintiffs have met their burden of showing that both the constitutional minimum standing requirements and the prudential standing requirements as described in <u>Mariana</u> are met.

B.  <u>Ripeness</u>

Defendants also challenge the ripeness of plaintiffs' claims based on the special needs requirement and the expenditure requirement of Section 1414.   The Court addresses these arguments in turn.

1.      *Legal Standard – Ripeness*

Like, the standing requirement, the doctrine of ripeness emerges from Article III, which "limits federal jurisdiction to actual 'cases' and 'controversies.'"  <u>Armstrong World Indus., Inc. v. Adams</u>, 961 F.2d 405, 410 (3d Cir. 1992).   The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements . . . ."  <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148 (1967), <u>overruled on</u> <u>other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99 (1977).

"[I]t is difficult to define the contours of the ripeness doctrine with precision.  The task is even more problematic when defining ripeness in the context of declaratory judgment actions . . . ."  <u>Step-Saver Data Sys., Inc. v. Wyse Tech.</u>, 912 F.2d 643, 646 (3d Cir. 1990) (internal citations omitted).  However, as the Supreme Court has explained, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Maryland Cas. Co. v. Pac. Coal</u> <u>& Oil Co.</u>, 312 U.S. 270, 273 (1941) (citation omitted).

In <u>Abbott Labs</u>, the Supreme Court directed lower courts faced with requests for injunctive and declaratory relief to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" in determining whether a case is ripe for adjudication.  387 U.S. at 149.  The Third Circuit has refined that test in the declaratory judgment context:  courts must examine "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment."  <u>Step-Saver</u>, 912 F.2d at 647 (citations omitted).  The Third Circuit and this Court have applied the <u>Step-Saver</u> test in actions seeking declaratory judgment and injunctive relief.  <u>See</u> <u>Pic-A-</u> <u>State Pa. v. Reno</u>, 76 F.3d 1294, 1298-1300 (3d Cir. 1996); <u>Tait v. City of Philadelphia</u>, 639 F. Supp. 2d 582, 596 (E.D. Pa. 2009).

2.     *Discussion – Ripeness*

After considering the three factors required under the <u>Step-Saver</u> test the Court concludes that plaintiffs' challenges to Section 1414 present a controversy ripe for resolution.

a.     Adversity of Interest – Ripeness

The first requirement under <u>Step-Saver</u> is that the parties have adverse legal interests. "Parties' interests are adverse where harm will result if the declaratory judgment is not entered." <u>Travelers Ins. Co. v. Obusek</u>, 72 F.3d 1148, 1154 (3d Cir. 1995).  "In order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  <u>Salvation Army v. Dep't of Cmty. Affairs</u>, 919 F.2d 183, 192 (3d Cir. 1990) (quoting <u>Steffel v. Thompson</u>, 415 U.S. 452, 460 (1974)).

The plaintiffs in this case face a real and substantial probability that the expenditure and special needs restrictions of Section 1414 will be enforced to their detriment, either by being enforced against them directly or by harming them indirectly through the loss of trust remainders.  While defendants emphasize that they have not yet formulated regulations or policy bulletins on their intended implementation of the challenged provisions, the Third Circuit "has afforded review even when the state has taken no active measures toward prosecution."  <u>Artway v. Attorney Gen.</u>, 81 F.3d 1235, 1247 (1996).   In this case, the DPW has stated its intent to enforce all the provisions of Section 1414 "including against Plaintiffs."  (Stips. ¶¶ 60, 61.) Whether a state has disavowed enforcement of a statute is a key factor in assessing the reality and immediacy of the threat facing plaintiffs.  <u>See, e.g.</u>, <u>Virginia v. Am. Booksellers Ass'n</u>, 484

U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); Planned Parenthood v. Farmer, 220 F.3d 127, 148 (3d Cir. 2000) (relying on the fact that "plaintiffs received no assurances that [the challenged statute] would not be enforced against them" to hold that plaintiffs had standing).

Moreover, the Court notes three additional facts that support plaintiffs' contention that they face a real and immediate threat of enforcement by defendants. First, although it never initiated formal proceedings, the Erie CAO has questioned whether the Family Trust complied with the expenditure limitation of Section 1414. (Defs.' Mot. for Summ. J. at 9.) That dispute was resolved informally. (Id.) Second, even if they have not attempted to formally enforce the expenditure and special needs restrictions against beneficiaries of pooled trusts, defendants have attempted to enforce other provisions of Section 1414 by, inter alia, declaring pooled trust beneficiaries ineligible for MA. (Stips. ¶¶ 44-46, 56.) Lastly, defendants have used the expenditure restriction of Section 1414 to challenge distributions from non-pooled special needs trusts. (Pls.' App'x, Ex. A, Coates Dep. at 74.) These facts, combined with defendants' stated intent to enforce all the provision of section 1414 against plaintiffs, compel the conclusion that the risks faced by plaintiffs are "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Steffel, 415 U.S. at 460.

Thus, the Court concludes that the adversity of interests prong of the Step-Saver test is satisfied.

b.      Conclusiveness of Judgment – Ripeness

The Court next turns to the second element in the <u>Step-Saver</u> test, the conclusiveness-of-judgment prong.   Whether a judgment may be considered conclusive often depends on the presence of a concrete set of facts.   However, when "the question presented is 'predominantly legal,'" the factual record is not as important, and the questions may be appropriate for judicial resolution even without a fully developed factual record.   <u>Armstrong</u>, 961 F.2d at 412 (quoting <u>Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n</u>, 461 U.S. 190, 201 (1983)).

The conclusiveness of judgment prong is satisfied in this case.   The questions presented are primarily legal, and the parties have stipulated to the relevant facts.   Contrary to defendants' argument, the fact that defendants have not yet proposed regulations or any other formal indication of how they will enforce Section 1414 is not determinative because plaintiffs' challenge is to the constitutionality of the statute.   <u>See</u> <u>Pic-A-State Pa. v. Reno</u>, 76 F.3d 1294, 1300 (3d Cir. 1996) ("Because [plaintiff] brings a facial challenge to the constitutionality of the Interstate Wagering Amendment, further development of the factual record by the prosecution of [plaintiff] would not inform our legal analysis.").

c.      Utility of Judgment – Ripeness

A declaratory judgment must be "of some practical help to the parties" at the time when it is made.   <u>Travelers Ins. Co. v. Obusek</u>, 72 F.3d 1148, 1155 (3d Cir. 1995).   "The idea behind the [Declaratory Judgment] Act was to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future."   <u>Step-Saver</u>, 912 F.2d at 649.   In debating the Declaratory Judgment Act, Congressman Gilbert explained, "'[u]nder the present

-22-

[pre-Declaratory Judgment Act] law, you take a step in the dark and then turn on the light to see if you stepped into a hole.  Under the declaratory judgment law you turn on the light and then take the step.'"  Id. at 649–50 (quoting 69 Cong. Rec. 2108 (1928)).  To assess utility, the Court must consider "whether the parties' plans of action are likely to be affected by a declaratory judgment."  Id. at 649 n.9.

In this case there can be no question that a declaratory judgment would be of assistance to the parties, as it will enable defendants and trust plaintiffs to conform their conduct to the law.  It will also aid individual plaintiffs by removing considerable uncertainty about their trust accounts and their eligibility for MA.  The Court thus concludes that the utility-of-judgment prong is satisfied.

For all the forgoing reasons, the Court determines that plaintiffs have standing to challenge Section 1414, and that their claims are ripe.  The Court will next proceed to consider the parties' cross motions for summary judgment.

## IV.    STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor."  Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  After examining the evidence of record, a court should grant summary judgment if the moving party "shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the

governing law," and genuine when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## V.    PLAINTIFFS' CLAIMS UNDER THE SUPREMACY CLAUSE

Defendants have moved for summary judgment on plaintiffs' claims under the

Supremacy Clause of the Constitution, on the ground that the Supremacy Clause does not afford

plaintiffs a cause of action to enforce Section 1396p(d)(4).[9]  Defendants originally raised this

argument at the motion to dismiss stage, but the Court deferred ruling until this stage of the

proceedings.  Lewis v. Rendell, 501 F. Supp. 2d 671, 694 (E.D. Pa. 2007).[10]

Contrary to defendants' assertions, the Supreme Court has ruled:  "A plaintiff who seeks

injunctive relief from state regulation, on the ground that such regulation is pre-empted by a

_____

[9] The Supremacy Clause of the U.S. Constution provides as follows:  "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

[10] While the Court's prior ruling that plaintiffs have stated a cause of action under 42 U.S.C. § 1983 makes a cause of action under the Supremacy Clause largely academic, the Court must address it because plaintiffs challenge one aspect of Section 1414 under the Supremacy Clause but not § 1983.  Specifically, plaintiffs challenge under the Supremacy Clause but not under § 1983, the provision of the fifty-percent payback provision, Section 1414(b)(3)(iii), that permits the state to recover MA costs from plaintiffs' assets during their lifetime after the state applies Section 1414(c) to terminate a trust. (See Second Am. Compl. ¶¶ 1(e), 139-46.)

federal statue which, by virtue of the Supremacy Clause, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Shaw v. Delta Air Lines, 463 U.S. 85, 96 (1983); see also St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000); Local Union No. 12004, USW v. Massachusetts, 377 F.3d 64, 75 (1st Cir. 2004) (holding that federal court had jurisdiction over claims under both § 1983 and the Supremacy Clause).

Defendants raise two arguments against allowing plaintiffs to proceed under the Supremacy Clause. First, defendants cite the Tenth Circuit's ruling in Day v. Bond, 511 F.3d 1030 (10th Cir. 2007), for the proposition that, in order to assert a claim under the Supremacy Clause, plaintiffs must show some form of injury flowing from defendants' actions beyond the invasion of the statutory rights conferred under Section 1396p(d)(4). Defendants' reliance on Day is misplaced. That case contains no such requirement and holds only that a plaintiff must first establish that he has standing before he can assert a claim under the Supremacy Clause. See id. at 1232-33.

Second, defendants argue that plaintiffs' assertion of claims under the Supremacy Clause is barred by the Third Circuit's Decision in Gonzelez v. Young, 560 F.2d 160, 166 (3d Cir. 1977). This argument is similarly unpersuasive. Gonzalez is a case about federal jurisdiction. The Third Circuit ruled in that case that the plaintiff had not met the requirements of federal jurisdiction under 42 U.S.C. § 1343. In this case, where federal jurisdiction is not disputed, Gonzales is simply inapplicable.

The Court thus concludes that plaintiffs' have properly asserted claims in this case under the Supremacy Clause, and defendants' motion for summary judgment is denied as to those claims.

## VI.   PREEMPTION OF SECTION 1414 BY FEDERAL LAW

The Court next turns to the question whether Section 1414 is preempted by federal law. Plaintiffs raise two different arguments as to why Section 1414, or at least some of its provisions, is preempted by federal law.  Plaintiffs argue, first, that Section 1414 is preempted in its entirety because it conflicts with the so-called "no-more-restrictive rule" established in 42 U.S.C. §§ 1396a(a)(10)(C)(i)(III) and 1396a(r)(2)(B).  Second, plaintiffs argue that certain provisions of Section 1414 are preempted because they conflict with both the no-more-restrictive rule and the specific trust counting rules enacted by Congress in Section 1396p(d)(4).

Defendants raise two related, general arguments that apply to both of plaintiffs' preemption theories.  Defendants contend first, that Section 1414 only regulates trust behavior and does not regulate MA eligibility, and is thus not prohibited by 1396p(d)(4) or covered by the no-more-restrictive rule.  Second, they contend that Section 1396p(d)(4) only affords states the option to exclude special needs trusts from resource calculations and does not require them to exclude assets in special needs trusts.  If either of defendants' arguments prevails, both of plaintiffs' preemption theories would fail.  The Court addresses defendants' arguments first and concludes that they are without merit.  It then proceeds to plaintiffs' preemption arguments.

A.  <u>Defendants' Preliminary Arguments About Preemption</u>

Defendants contend first, that Section 1414 only regulates trust behavior and does not regulate MA eligibility and second that Section 1396p(d)(4) does not require states to exclude assets in special needs trusts from resource calculations.  The Court rejects these arguments.

      1.  *Defendants' Argument that Section 1414 Is a Permissible Law Regulating State Trusts*

Defendants contend that Section 1396p(d)(4) does not require states to recognize special needs or pooled trusts and does not limit state regulation of such trusts.  In advancing this position, they argue that Section 1414 is not directed toward Medicaid eligibility but rather represents part of Pennsylvania's general regulations of trusts.  While superficially appealing, this theory is undercut by the actual content of Section 1414, its intended effects, and the facts surrounding its enactment.

Section 1414 was conceived and drafted by the DPW and is included, not among Pennsylvania's general trust laws, but rather in its public welfare code.  More importantly, defendants' own arguments make clear that both the purpose and the effect of Section 1414 are to limit MA eligibility.  For example, defendants explain that the purpose of Section 1414(b)(2) is to allow the disapproval of very large trusts so that wealthy individuals cannot qualify for MA. (Defs.' Mot. for Summ. J. at 26-27.)

The Court rejects this argument.  Whether 1414 is framed in terms of regulating state trusts is of no moment.  A state law is preempted as conflicting with federal law wherever (1) it is impossible to comply with both the federal and state law or (2) the state law frustrates Congressional intent.  <u>Horn v. Thoratec Corp.</u>, 376 F.3d 163, 185 (3d Cir. 2004) (citation omitted).  These preemption rules apply notwithstanding the fact that Section 1414 may be

-27-

framed in different terms than the federal law with which it conflicts. Thus the Court concludes that Section 1414 is not exempt from a preemption analysis simply because it is a law regulating state trusts.

2. *Defendants' Argument that Section 1396p(d)(4) is Not Mandatory*

Defendants' second argument – that Section 1396p only provides states the option not to count special needs trusts in eligibility calculations – is also unavailing, given the Court's earlier ruling that Section 1396p(d)(4) creates actionable rights under Section 1983. Defendants cite a Tenth Circuit case, <u>Keith v. Rizzuto</u>, for the proposition that the resource-counting exceptions in 1396p(d)(4) are only permissive and not mandatory. 212 F.3d 1190, 1193 (2000). The Second Circuit has suggested in dicta that it is also open to this interpretation of Section 1396p(d)(4) as non-mandatory. <u>Wong v. Doar</u>, 571 F.3d 247, 258 (2d Cir. 2009) ("[W]e discern no inconsistency in a statute that provides that an individual may create a Special Needs Trust with SSDI income, but leaves it to the agency to determine how to treat the income contained in such a trust – whether from SSDI or any other source – for purposes of Medicaid eligibility . . . .").

However, in ruling that Section 1396p(d)(4) creates actionable rights under Section 1983 this Court determined that Section 1396p(d)(4) is mandatory. <u>Lewis v. Rendell</u>, 501 F. Supp. 2d 671, 688 (E.D. Pa. 2007) ("§ 1396p(d)(4)(A) refers to the eligibility for Medicaid and provides that eligibility will not be affected by the existence of a supplemental needs trust."). While this remains a debated question of law, the Court sees no compelling reason to revisit its earlier ruling now. Importantly, the Court's determination that Section 1396p(d)(4) is mandatory is consistent with the discussion of that provision by several other federal courts. <u>See, e.g.</u>, <u>Northwest Bank of North Dakota v. Doth</u>, 159 F. 3d 328, 330 (8th Cir. 1998); <u>Horowitz ex rel.</u>

Horowitz v. Apfel, 143 F. Supp. 2d 240, 242 (E.D.N.Y. 2001), aff'd on other grounds, 29 F. App'x 749 (2d Cir. 2002); Sullivan v. County of Suffolk, 1 F. Supp. 2d 186, 190 (E.D.N.Y. 1998), aff'd on other grounds, 174 F.3d 282  (2d Cir. 1999); accord CMS State Agency Regional Bulletin No. 2008-05 CMS (May 12, 2008) (Pl. Apps.' Ex. B at 1) ("A trust that meets the requirements of [1396p(d)(4)(C)] is exempt from being treated under the normal Medicaid trust rules . . . .).

The Court thus rejects both of defendants' preliminary arguments that Section 1414 does not run afoul of Section 1396p(d)(4).   The Court will next proceed to address plaintiffs' arguments that Section 1414 is preempted because it conflicts with federal Medicaid Act.

B.  Plaintiffs' Preemption Arguments

Plaintiffs make two arguments that Section 1414 is preempted by federal law.  First, plaintiffs argue that Section 1414 is preempted under the so called "no-more-restrictive rule" of 42 U.S.C. § 1396a(a)(10)(C)(i)(III).  Second plaintiffs contend that Section 1414 conflicts with the individual provisions of the federal Medicaid Act on pooled trusts, Section 1396p(d)(4).  The Court concludes that the no-more-restrictive rule is applicable to the pooled trusts at issue and that parts of Section 1414 conflict with both Section 1396p(d)(4) and the no-more-restrictive rule.

1.  *Background of the No-More-Restrictive Rule*

States can elect to administer their Medicaid programs in different ways.  Pennsylvania has elected to participate in Medicaid through Section 1634 of the Social Security Act, codified at 42 U.S.C. § 1383c.  In Section 1634 states, the Social Security Administration makes most Medicaid Eligibility determinations on behalf of the state.   See POMS:SI 01715.010(A)(3).

Section 1634 states are generally required to provide Medicaid coverage to all recipients of SSI benefits (the "categorically needy").  Section 1634 states may also choose to provide medical assistance to those not receiving SSI (the "medically needy"), including disabled persons.  <u>See Morabito v. Blum</u>, 528 F. Supp. 252, 257 n.1 (S.D.N.Y. 1981).  If a state so elects, the state plan must describe "the single standard to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility, <u>which shall be no more restrictive than the methodology which would be employed under the supplemental security income program</u> in the case of groups consistent of aged, blind, or disabled individuals in a State in which such program is in effect."  42 U.S.C. § 1396a(a)(10)(C)(i)(III) (emphasis added).  "[A] methodology is considered to be 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance <u>and no individuals who are otherwise eligible are made ineligible for such assistance</u>."  42 U.S.C. § 1396a(r)(2)(B) (emphasis added).  "Consequently, the [state] can not treat as available resources any assets that the SSI regulations would not treat as available resources." <u>James v. Richman</u>, 547 F.3d 214, 218 (3d Cir. 2008).

Plaintiffs contend that Section 1414 conflicts with this no-more-restrictive requirement because it includes trust assets that 1396p(d)(4) excludes, resulting in some disabled people who would be eligible under federal Medicaid and SSI standards being deemed ineligible for MA.

### 2. *Whether the No-More-Restrictive Rule Applies in the Context of Section 1396p(d)(4) Special Needs Pooled Trusts*

Defendants argue that Section 1396p(d)(4) is an exception to the general no-more-restrictive rule of 42 U.S.C. § 1396a(a)(10)(C)(i)(III).

The history of the relationship between the trust counting rules in Section 1396p and the no-more-restrictive rule is complex.  Sorting it out is made more difficult by the fact that there are no cases discussing the applicability of the no-more-restrictive rule in the context of Medicaid trusts, and neither the statutes themselves, nor the relevant legislative history, nor the administrative agencies tasked with applying them, speak clearly on the issue.  Notwithstanding that, the history of the Medicaid trust law and related statutes and the way that agencies have enforced these laws over time, strongly support the position that, from 1993 through 1999, the Medicaid trust laws were treated as an exception to the no-more-restrictive rule, but that any such exception was closed by Congress for trust accounts created after 1999.

Congress passed the Medicaid trust counting rules as part of the 1993 Omnibus Budget Reconciliation Act, Pub. L. 103-66, Title XIII § 13611(b), 107 Stat. 624-628 (1993).  Section 1396p(d) begins, "For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan . . . ."  42 U.S.C. § 1396p(d)(1) (emphasis added).  It appears that this introductory language was included because the trust counting rules established under Section 1396p(d) for Medicaid were different from those applied to determine SSI eligibility.  Compare Pub. L. 103-66, Title XIII § 13611(b), 107 Stat. 624-628 (1993) with POMS:SI 01120.200(D).  The Medicaid trust rules were different from the SSI trust rules until January 1, 2000, when the Foster Care Independence Act of 1999 (the "FCIA") became law.  FCIA, Pub. L. 106-169, Title II § 206(a), 113 Stat. 2833 (1999), codified at 42 U.S.C. § 1382b(e).

While Congress's intent on the treatment of trusts accounts between 1993 and 1999 was arguably unclear, federal administrative agencies responsible for making SSI and Medicaid eligibility determinations treated pooled special needs trust accounts established from 1993

through 1999 as though the counting of those resources was an exception to the general no-more-restrictive requirement.   For example, the Policy Operations Manual System ("POMS") published by the Social Security Administration states that, for trusts established before January 1, 2000, "[t]he Medicaid trust law [42 U.S.C. § 1396] affects the individual's eligibility for Medicaid only, and has no effect on SSI income and resource determination."   POMS:SI 01120.200 (emphasis in original).   Likewise, the State Medicaid Manual published by the Center for Medicare and Medicaid Services ("CMS"), the agency within HHS responsible for working with state governments to administer Medicaid, interpreted the trust provisions of Section 1396p(d) as an exception to the normal rule that SSI recipients automatically qualify for Medicaid:

> Under the trust provisions in [§ 1396p(d)], you must consider whether and to what extent a trust is counted in determining eligibility for Medicaid. The following instructions explain the rules under which trusts are considered.  These instructions apply to eligibility determinations for all individuals, including cash assistance recipients and others who are otherwise automatically eligible and whose income and resources are not ordinarily measured against an independent Medicaid eligibility standard.

SMM, § 3259.1 (Nov. 1994) (emphasis added).   These manuals support the position that, for trust accounts established from 1993 through 1999, the trust counting rules of Section 1396p(d)(4) are an exception to the general no-more-restrictive requirement.

However, when Congress passed the FCIA, it included the Section 1396p(d)(4) Medicaid trust counting exceptions in the SSI Program, 42 U.S.C. § 1382b(e), bringing the eligibility requirements back into alignment.   In so doing, Congress closed off any exception to the no-more-restrictive rule that might have existed for trusts created between 1993 and January 1, 2000.   The report of the Ways and Means Committee of the House of Representatives states that

one purpose of the FCIA was to put the SSI and Medicaid trust rules on the same standard.  See H. Rep. 106-182, at 20 (noting a goal of establishing "horizontal equity" between Medicaid and SSI).  Likewise, although the POMS never refers directly to the no-more-restrictive requirement in the trust context, it supports the argument that any gap in the no-more-restrictive rule was closed by the FCIA.  This understanding on the part of the Social Security Administration that any gap has been closed by the FCIA can be seen by comparing POMS provisions for trusts created before the effective date of the FCIA with those for trusts created thereafter.  While the section covering trusts established before the effective date of the FCIA specifies a separate determination for Medicaid eligibility and dictates a procedure for referring such trust considerations to state Medicaid agencies, POMS:SI 01120.200, the provision for trusts created on or after January 1, 2000 states that the exceptions under SSI are the same as those for Medicaid and does not direct referrals of such trusts to state agencies.  POMS:SI 01120.203.[11] Thus both the POMS and the legislative history of the FCIA support the position that there is no exception to the no-more-restrictive rule for trusts established after 1999.

For all of the foregoing reasons, the Court concludes that Section 1396p(d)(4) does not represent an exception to the no-more-restrictive rule for trust accounts formed after 2000.  All of the trust accounts at issue in this case were formed after 2000.  (Stips. ¶¶ 2-14.)  Because there is no exception to the no-more-restrictive rule for Section 1396p(d)(4) for the trust accounts at

---

[11] While defendants cite a section of the POMS describing the existence of Medicaid qualifying trusts as a "Medicaid-only" eligibility factor,  POMS:SI § 0715.010, this language and similar language in the State Medicaid Manual is best explained as a reference to the rules for trusts established before the effective date of the FCIA.  Cf. POMS:SI 01120.200.  Significantly, defendants do not cite any provisions of the POMS stating that that the SSI rules for trust accounts established after 2000 are different than the Medicaid rules.

issue, the no-more-restrictive rule preempts any part of Section 1414 that sets a more restrictive standard for trust counting than Section 1396p(d)(4).

        3.   *Section 1414 Is More Restrictive than, and Conflicts with, Section 1396p(d)(4)*

Having determined that Section 1396p(d)(4) is not an exception to the no-more-restrictive rule, the Court next proceeds to consider whether Section 1414 sets more restrictive standards than federal Medicaid and Social Security law and also whether it directly conflicts with the trust counting requirements of Section 1396p(d)(4).

Section 1414 sets a more restrictive standard than federal SSI law in two ways. First, the enforcement mechanism, Section 1414(c), effectively makes all of the provisions of Section 1414(b) – even those that might not be more restrictive as applied to an individual beneficiary – a "more restrictive standard" by making the eligibility of one pooled trust beneficiary contingent on the behavior of the trustee with respect to <u>other</u> pooled trust beneficiaries. Second, some of the individual provisions of subsection (b) establish additional eligibility criteria not included in federal law and thereby establish more restrictive standards. The Court also concludes that Section 1414(c) and certain provisions of Section 1414(b) directly conflict with Section 1396p(d)(4).

        a.    Section 1414(c)

The mechanism of Section 1414 operates differently than federal law on Medicaid and SSI eligibility for special needs pooled trust beneficiaries in at least one critical respect: it makes the Medicaid eligibility of one pooled trust beneficiary contingent on the behavior of other pooled trust beneficiaries or on the behavior of trustees acting with regard to other pooled trust

beneficiaries.  The Court concludes that this violates the no-more-restrictive rule and directly conflicts with Section 1396p(d)(4).

Section 1414(c) permits the cancellation of an entire pooled trust on the basis of one violation of 1414(b).  For example, 1414(b)(1) provides that "[t]he beneficiary shall be an individual under the age of sixty five."  The effect of Section 1414(c) is to set as a Medicaid eligibility requirement that a person shall not be a member of a pooled trust in which <u>any other beneficiary</u> was older than 64 at the time that beneficiary created his trust.  This practice of using one person's compliance with Section 1414 to affect the MA eligibility of another person does not exist in, and sets a more restrictive standard than, federal Medicaid or SSI eligibility law. Thus, this enforcement scheme creates a more restrictive standard even if the individual requirements of Section 1414(b) would be permissible if applied to a single account holder.

Moreover, in light of the Court's determination, <u>supra</u>, that the trust counting exceptions codified at Section 1396p(d)(4) are mandatory and grant an individual right to have certain assets excluded when calculating MA eligibility, the Court concludes that this practice of using one person's compliance with Section 1414 to affect another person's eligibility for MA directly conflicts with Section 1396p(d)(4).  For these reasons, the Court concludes that Section 1414(c) is preempted by federal law.

b.      Section 1414(b)

In addition to their challenge to Section 1414(c), plaintiffs contend that four aspects of Section 1414(b) establish more restrictive standards than, and conflict with, Section 1396p(d)(4). The analysis for these two arguments is essentially the same, and the Court will address them together.

i.      Special Needs Requirement

The Court concludes that the special needs requirement of Section 1414(b)(2) violates the no-more-restrictive rule and conflicts with Section 1396p(d)(4).  In order to establish a pooled special needs trust account, Section 1396p(d)(4)(C) requires only that a person be disabled as defined in 42 U.S.C. § 1382c(a)(3);[12] it does not include any additional requirements related to the extent of the disability or the person's ability to pay for goods and services.  Section 1414 adds to this federal requirement a provision that "the beneficiary shall have special needs that will not be met without the trust."  62 Pa. Stat. Ann. § 1414(b)(2).  The purpose of this provision, according to defendants, is to permit the state to disapprove very large pooled trust accounts and thereby prevent wealthy people from qualifying for Medicaid.  (See Defs.' Mot. for Summ. J. at 26-27.)  While this may be a worthy goal, federal Medicaid and SSI law contain no such requirement.  It is clear that the effect of Section 1414(b)(2) is to render ineligible disabled persons who would be eligible under federal law.  Thus, the special needs requirement violates the no-more-restrictive rule of the federal Medicaid Act, and conflicts with Section 1396p(d)(4)(C).  For these reasons, the Court concludes that the special needs requirement is preempted by federal law.

ii.      Age Requirement

Section 1414(b)(1) limits the availability of pooled trust accounts to disabled individuals younger than 65 years.  The pooled trust provision of federal law, Section 1396p(d)(4)(C), contains no age restriction for disabled individuals establishing a pooled special needs trust.  By

---

[12] An individual is disabled if he is "unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or which has lasted or is expected to last for at least twelve consecutive months."  42 U.S.C. § 1382c(a)(3)(C)(I).

contrast, the same federal statute limits access to payback trusts – another kind of trust excepted from resource calculation under Section 1396p(d)(4) – to individuals "under age 65."  42 U.S.C. § 1396p(d)(4)(A).  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  Russello v. United States, 464 U.S. 16, 23 (1983).

Defendants argue that the non-inclusion of an age restriction with respect to special needs pooled trusts was an "unintentional drafting error by Congress."  (Defs.' Mot. for Summ. J. at 25.)  In support of this position, defendants point out that transfers of assets by persons over 65 are subject to certain penalties under federal law.  (Id.)  The Court rejects this argument.  Section 1396p(c) penalizes transfers of assets by disabled persons over 65 by disqualifying them for a certain period from a limited set of MA benefits related to institutionalized care and home health care, but does not disqualify them from all MA benefits.  42 U.S.C. § 1396p(c)(1).  Given the way it structured the transfer penalties, it appears Congress concluded that for some disabled persons age 65 and older, the benefits of establishing a pooled trust account would outweigh the penalties incurred by transferring assets into the trust.  Moreover, the presumption that Congress acted intentionally in including an age restriction for payback trusts but not including one for pooled special needs trusts is supported by the fact that Congress has amended Section 1396p four times since its passage in 1993, but has never corrected the alleged "drafting error" by adding an age requirement for pooled special needs trusts.    See American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5; Medicare Improvements for Patients and

Providers Act of 2008, Pub. L. No. 110-275; Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432; Deficit Reduction Act of 2005, Pub. L. No. 109-171.

In light of the language of Section 1396p(d)(4) and the surrounding sections of the statute, the Court concludes that Congress intended to permit disabled persons age 65 and older to form pooled special needs trust accounts. Section 1414(b)(1) conflicts with this provision and establishes a more restrictive standard for MA eligibility in violation of § 1396a(a)(10)(C)(i)(III) and § 1396a(r)(2)(B). Thus, 1414(b)(1) is preempted by federal law.

### iii.    Expenditure Restrictions

Section 1414(b)(3) requires that "all distributions from the trust must be for the sole benefit of the beneficiary" and "must have a reasonable relationship to the needs of the beneficiary." 62 Pa. Stat. Ann. § 1414(b)(3)(i), (ii). Unlike the special needs requirement and the 65-year age limit, these expenditure restrictions apply to the ongoing management of the trusts rather than initial eligibility to create a pooled trust account. The Court will treat these requirements in order. The Court concludes that the sole benefit requirement does not establish a more restrictive standard and does not conflict with Section 1396p(d)(4). On the other hand, the "reasonable relationship" requirement does violate the no-more-restrictive rule and conflicts with Section 1396p(d)(4) because it limits the use of pooled trusts contrary to Congress's intent and has the effect of disqualifying persons for MA who would be eligible under federal law.

Section 1414's requirement that distributions be made for the sole benefit of beneficiaries restates the requirement found in the Medicaid trust laws that the trust accounts be "established solely for the benefit of individuals who are disabled." 42 U.S.C. § 1396p(d)(4)(c)(iii). The sole benefit requirement of Section 1414 comports with the CMS's interpretation of the sole

benefit requirement in federal law, which CMS describes as requiring that "no individual [other than the trust beneficiary] or entity can benefit from the assets transferred in any way, whether at the time of the transfer or at any time in the future."  CMS, State Medicaid Manual § 3258.1 (1994).  Thus, the Court concludes that the sole benefit requirement of Section 1414(b)(3)(ii) does not set a more restrictive standard than, or otherwise conflict with, the federal Medicaid Act.

The Court next turns to the reasonable relationship requirement.  Plaintiffs and defendants agree that the requirement that distributions "must have a reasonable relationship to the needs of the beneficiary" means that expenditures must fall within the definition of "special needs" as that term is defined in Section 1414(f).  (Pls.' Mot. for Summ. J. at 51; Defs.' Mot. for Summ. J. at 28-29.)  In significant part, Section 1414(f) defines special needs as "items, products or services . . . [that] assist in and are related to the treatment of the beneficiary's disability." 62 Pa. Stat. Ann § 1414(f).  While defendants maintain that they construe this language "extremely broadly," (Defs.' Mot. for Summ. J. at 29), plaintiffs contend that this restriction violates the purpose of Section 1396p(d)(4) – to preserve the utility of pooled trusts as a broadly accessible resource for disabled people.

Significantly, Section 1396p(d)(4)(C) contains no limitation on the use of trust funds, and courts discussing the provision have assumed that funds in special needs trusts can be used broadly for purposes beyond the treatment of specific disabilities.  See, e.g., Norwest Bank of N.D., N.A. v. Doth, 159 F.3d 328, 330 (8th Cir. 1998) (stating that disabled persons with special needs trusts "can use [trust] funds as a supplement to enhance the quality of their lives").  This view of the role Congress intended for these trusts is supported by one of the few academic

commentaries on the history of Section 1396p(d)(4).  In an article describing the passage of the trust exceptions, Joseph A. Rosenberg explains that Congress was working against a backdrop in which trusts were used to provide disabled individuals with a broad range of goods and services not directly related to the treatment of their disabilities.  See Joseph A. Rosenberg, "Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest," 10 B.U. Pub. Int. L.J. 91, 128-30 (2000) (noting that parents used trusts to plan for the needs of their disabled children).  Professor Rosenberg writes that the trust counting exceptions were inserted into the statute in order to maintain this status quo for disabled individuals.  Id. at 128-30; see also id. at 134 ("Nonprofit groups perform caregiving functions that were previously the responsibility of parents and, from a historical perspective, were assumed by the extended family and informal support networks. The pooled trust provisions implicitly recognize this and expand the authority of these groups to assume financial management responsibilities for people with disabilities."); see also Sullivan v. County of Suffolk, 174 F.3d 282, 284 (2d Cir. 1999) ("A supplemental needs trust is a discretionary trust . . . intended to provide for expenses that assistance programs such as Medicaid do not cover.") (citation and quotation marks omitted).

For all of the foregoing reasons, the Court concludes that 1414(b)(3)(ii) sets a more restrictive standard than federal law for what qualifies as an exempted special needs pooled trust, in violation of the no-more-restrictive rule, and conflicts with the trust counting exceptions codified at Section 1396p(d)(4)(C).

iv.      Fifty-Percent Payback Provision

Section 1414(b)(3)(iii) provides that a pooled trust can keep only fifty percent of the remainder left in a pooled trust account after the death of a beneficiary without an obligation to reimburse the state for that beneficiary's Medicaid expenses.  Plaintiffs contend that this violates federal law, which they read to permit a pooled trust to keep one-hundred percent of the remainder without any obligation to reimburse the state.

The federal statute reads as follows:

> To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the state plan under this title.

42 U.S.C. § 1396p(d)(4)(C)(iv).  Plaintiffs emphasize the first clause of this provision – the phrase "to the extent that amounts remaining in the beneficiaries account are not retained by the trust" – arguing that it permits trusts to elect to keep the entire amount, while defendants contend that the provision is neutral and leaves states to regulate the amount of the remainder that trusts are allowed to keep.

Congress's intent with respect to trust remainders is most clearly seen by comparing the provision for remainders left in pooled trust accounts with the provisions for remainders in non-pooled trust accounts.  Both Section 1396p(d)(4)(A) and Section 1396p(d)(4)(B), which address non-pooled exempted trusts, state that "the State will receive all amounts remaining in the trust upon the death of [the beneficiary] up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan . . . ."   42 U.S.C. §§ 1396p(d)(4)(A), (B)(ii).  On the other hand, the statute provides with respect to pooled special need trusts that the trust shall

-41-

reimburse the state for MA "[t]o the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust." 42 U.S.C. § 1396p(d)(4)(C)(iii). The different language used by Congress with respect to pooled trusts evidences a policy decision to permit pooled trusts to retain funds left in an account after the beneficiary's death rather than repay the state for money paid out for MA. See Rusello, 464 U.S. at 23 ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); Adams Fruit Co. v. Barrett, 494 U.S. 638, 645 (1990) ("[B]asic principles of statutory construction . . . require giving effect to the meaning and placement of the words chosen by Congress."). Given that Congress has made this policy determination, it would be inconsistent to permit states to negate it by capping the amount that pooled trusts can retain or by eliminating their right to retain funds altogether. In light of this, the Court concludes that the fifty-percent payback provision sets a more restrictive standard than the federal Medicaid Act and conflicts with Section 1396p(d)(4)(C). The fifty-percent payback provision is therefore preempted by federal law.

4. *Summary –Preemption*

Because subsections (b)(1), (b)(2), (b)(3)(ii), (b)(3)(iii), and (c) set a more restrictive standard than Medicaid and SSI law and conflict with Section 1396p(d)(4)(C), they are preempted by federal law. Medicaid is no exception to the general rule that state laws that conflict with federal laws are preempted. "While Medicaid is a system of cooperative federalism, the same [preemption] analysis applies; once the state voluntarily accepts the conditions imposed by Congress the Supremacy Clause obliges it to comply with federal

requirements." Lankford v. Sherman, 451 F.3d 496, 510 (8th Cir. 2006); see also James v. Richman 547 F.3d 214, 218 (3d Cir. 2009) (holding that the no-more-restrictive rule prohibited the DPW from denying eligibility based on an annuity that was not countable for SSI purposes); Weatherbee v. Richman, 595 F. Supp. 2d 607 (W.D. Pa. 2009), aff'd 351 F. App'x 786 (3d Cir. 2009) (holding that a Pennsylvania statute on the counting of annuities preempted was by federal law because it violated the no-more-restrictive rule).

For all of the foregoing reasons, the Court concludes that Section 1414(b)(1), (b)(2), (b)(3)(ii), (b)(3)(iii), and (c) violate the no-more-restrictive rule of 42 U.S.C. Section 1396a(a)(10)(C)(i)(III) and conflict with the Medicaid trust counting rules codified at 42 U.S.C. § 1396p(d)(4), and are therefore preempted. Thus the Court grants plaintiffs' motion as to those provisions.

The Court next considers whether portions of Section 1414 can be severed and remain in force notwithstanding the fact that subsections (b)(1), (b)(2), (b)(3)(ii), (b)(3)(iii), and (c) are preempted by federal law.

### a.  Severability

Once a court concludes that some provisions of a statute or ordinance are preempted, the Court must determine whether the remaining provisions of the statute can be severed so as to continue in effect. When a federal court is called upon to invalidate a state statute, the severability of the constitutional portions of the statute is governed by state law. See Lozano v. City of Hazleton, 620 F.3d 170, 182 (3d Cir. 2010); Rappa v. New Castle County, 18 F.3d 1043, 1072 (3d Cir. 1994).

Pennsylvania law strongly favors severability:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa. Cons. Stat. Ann. § 1925.

In this case, the Court concludes that subsections (b)(1), (b)(2), (b)(3)(ii), (b)(3)(iii), and (c) are preempted in their entirety, but that the other provisions of Section 1414, namely subsections (a), (b)(3)(i), (b)(4), (d), (e), and (f), are severable.  Subsection (a) provides that "[a] special needs trust must be approved by a court of competent jurisdiction."  62 Pa. Stat. Ann. § 1414(a).  Subsection (b)(3)(i) is the sole benefit requirement, which the Court has concluded does not conflict with federal law.  Subsection (b)(4) empowers the DPW to review trusts to ensure that they conform with state and federal law.  Subsection (d) requires that liens and claims in favor of the DPW be satisfied before a pooled trust can be funded.  Subsection (e) provides that "[u]pon the death of the beneficiary or upon earlier termination of the trust, the trustee shall notify and request a statement of claim from the [DPW], addressed to the secretary."  62 Pa. Stat. Ann. 1414(e).  Finally, subsection (f), contains definitions of the terms "pooled trust," "special needs," and "special needs trust."

Subsections (a), (b)(3)(i), (b)(4), (d), (e), and (f) are severable from the preempted provisions unless they are "so essentially and inseparably connected with, and so depend upon,

the void provision[s] or application, that it cannot be presumed the General Assembly would have enacted [them] without the void [provisions]" or that "the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." 1 Pa. Cons. Stat. Ann. § 1925. Applying this test, the Court determines that these provisions are severable.

With the exception of 1414(c), which provides an enforcement mechanism for the other provisions of the statute and which this Court has determined is preempted by federal law, the provisions of Section 1414 operate independently of each other. For example, the requirement of subsection (a) that a special needs trust be approved by an appropriate Court is in no way affected by the various requirements of 1414(b), some of which the Court has concluded are preempted by federal law. The same is true of (b)(3)(i), (b)(4), (d), (e), and (f) which establish administrative requirements or provide definitions that are not "inseparably connected with" the void provisions of Section 1414. Id.

It might be argued that, because these surviving subsections were part of a statute that was enforced, inter alia, through subsection (c), without subsection (c) they are "incapable of being executed in accordance with the legislative intent." Id. However, there is no evidence that, in including subsections (a), (b), (d), (e), and (f) in Section 1414, the objective of the Pennsylvania legislature was to enable enforcement only through subsection (c). Indeed, these provisions may be enforceable through other means, including other procedures for enforcing trust laws. Thus, the Court cannot conclude that surviving provisions of Section 1414 are "incapable of being executed in accordance with the legislative intent." Id. Because these

provisions are also not "inseparably connected with" the preempted provisions, the Court concludes that they are severable and may remain in effect.

## VII.   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have moved under Rule 23(b)(2) of the Federal Rules of Civil Procedure to certify a class consisting of:

> All disabled individuals who are, or who will become, eligible for Medical Assistance and for whom pooled special needs trust accounts that comply in all respects with the Medicaid Act have been or will be established, but who have been or will be denied Medical Assistance, or who are subject to termination of their Medical Assistance benefits as a result of the application of Section 1414, as well as trustees of pooled special needs trusts and other persons acting in a representative capacity on behalf of such disabled individuals.

Defendants make a number of arguments as to why plaintiffs' motion should be denied. In addition to arguments on standing and ripeness that have already been addressed in Section III, supra, defendants argue, first, that ARC Community Trust and its members cannot satisfy the adequacy requirement to challenge the fifty-percent payback provision because ARC Community Trust has no policy on the use of remainders. Second, defendants contend that the Family Trust is not an adequate class representative because it is does not meet the federal requirements for a special needs pooled trust. Defendants also assert that the proposed class is too broad because trustees are not proper class members.

A. Legal Standard

A class action suit is appropriate when the "issues involved are common to the class as a whole." Califano v. Yamasaki, 442 U.S. 682, 701 (1979). Under those circumstances, the certification of a class may both promote judicial economy and save resources for parties who may otherwise repeatedly litigate the same issue. See id.

-46-

For the Court to certify a plaintiff class, plaintiffs must satisfy the four prerequisites for a class action set forth in Federal Rule of Civil Procedure 23(a) and the requirements of Rule 23(b)(2).  The four elements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four elements are often referred to as "'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation,' respectively."  Hanrahan v. Britt, 174 F.R.D. 356, 361 (E.D. Pa. 1997).  "'Commonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiffs . . . ."  Hassine v. Jeffes, 846 F.2d 169, 176 n.4 (3d Cir. 1988).

Plaintiffs must also establish that the putative class action meets the requirements of Rule 23(b)(2).  That section provides:

> The party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).

"The interests of justice require that in a doubtful case any error, if there is to be one, should be committed in favor of allowing a class action."  Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985), cert. denied, 474 U.S. 946 (1985).  A court certifying a class "must include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment."  Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d. Cir. 2006) (citation omitted).

-47-

B. <u>Discussion</u>

The Court concludes that the requirements of Rule 23 are met.  Because plaintiffs bear the burden of demonstrating compliance with the requirements of Rule 23, the Court will assess each prong, even though some are not contested.

1. *Numerosity*

The proposed class clearly satisfies the numerosity requirement.  Combined, the Family Trust and ARC Community Trust hold accounts for over 1,000 members.  (Stip. ¶¶ 15, 24.) Additionally, there are an unknown number of persons who are eligible or may become eligible to form a pooled trust and receive Medicaid benefits under federal law.  Taken together, this is more than sufficient to satisfy the numerosity requirement because joinder of all of these persons is not practical.  <u>See, e.g.</u>, <u>Hoffman Elec., Inc. v. Emerson Elec. Co.</u>, 754 F. Supp. 1070, 1075 (W.D. Pa. 1991) (holding that "impractical . . . does not mean impossible" and finding the numerosity prong satisfied for class of roughly 100 members).  Defendants do not argue that plaintiffs have failed to meet the numerosity requirement, and the Court concludes that plaintiffs have satisfied their burden with respect to this prong.

2. *Commonality*

It is likewise beyond dispute that there are questions of law and fact common to the class. The commonality requirement is almost always satisfied in cases involving injunctive actions. <u>See</u> <u>Baby Neal ex rel. Kanter v. Casey</u>, 43 F.3d 48, 57 (3d Cir. 1994) (quoting 7A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1763, at 201 (2d ed. 1986)).  This case is no exception: the questions of whether Section 1414 conflicts with federal law and what,

if any, of its provisions are enforceable are common to all members of the class.  Thus, the commonality requirement is met.

        3.  *Typicality*

The typicality requirement overlaps with both the commonality and adequacy requirements.  Davis v. Thornburgh, 903 F.2d 212, 233 (3d Cir. 1990).  The typicality requirement aims to "ensur[e] that the class representatives are sufficiently similar to the rest of the class – in terms of their legal claims, factual circumstances, and stake in the litigation – so that certifying those individuals to represent the class will be fair to the rest of the proposed class."  In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009).  When the claims of the representatives and the class members stem from a single event or a single course of conduct or where plaintiffs allege that defendants have violated their constitutional rights, the typicality requirement is usually satisfied.  See 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1764, at 270, 296 (3d ed. 2005).  Plaintiffs' assertion of typicality in this case is particularly strong because the issues to be decided are almost entirely legal and the plaintiffs have similar stakes in the litigation – retaining their eligibility for medical assistance benefits and preventing the cancellation of their trusts.  In this case, the Court concludes that the claims of the named plaintiffs are typical of those all members of the proposed class who created special needs pooled trust accounts after January 1, 2000.

However, in light of the Court's ruling that the no-more-restrictive rule applies to trust accounts created after January 1, 2000[13] and the fact that none of the named plaintiffs created their accounts prior to that date, the named plaintiffs do not satisfy the typicality requirement for

---

[13] See Section VI(B)(2), supra.

members of the proposed class who formed their trusts earlier than 2000.  Thus the Court limits

the members of the class to those who formed pooled trust accounts after January 1, 2000.

       4.  *Adequacy*

The adequacy analysis under Rule 23(a) requires that "the plaintiff must not have

interests antagonistic to the class."  Anderson v. Department of Pub. Welfare, 1 F. Supp. 2d 456,

462 (E.D. Pa. 1998) (quoting Weiss v. York Hosp., 745 F.2d 786, 811 (3d Cir. 1984)).[14]

Defendants contend that the named plaintiffs have interests antagonist to the class.

Defendants argue, first, that ARC Community Trust and its members cannot satisfy the adequacy

requirement to challenge the fifty-percent payback provision because ARC Community Trust has

no policy on the use of remainders, and second that the Family Trust and its members are not

adequate class representatives because the Family Trust does not meet the federal requirements

for a special needs pooled trust.

The Court addresses these arguments in order, and concludes that, while ARC

Community trust and its members meet the adequacy requirement, the Family Trust and its

account holders do not.

       i.    Adequacy of ARC Community Trust and Its Account Holders

Under plaintiffs' reading of Section 1396p(d)(4)(C), special needs pooled trusts are

permitted to keep one-hundred percent of the funds remaining in a pooled trust account upon the

death of a beneficiary.  The fifty-percent payback provision, Section 1414(b)(3), purports to limit

the amount a special needs pooled trust can retain without any obligation to reimburse the state at

---

[14] The adequacy of class counsel is now considered under Rule 23(g), rather than as part of the
adequacy requirement of Rule 23(a)(4).  Fed. R. Civ. P. Rule 23(g) (commentary to 2003
amendments).  The issue of whether plaintiffs' counsel should be appointed as class counsel
under Rule 23(g) is treated separately in Section VII(B)(8), infra.

fifty-percent.[15]   Defendants contend that ARC Community Trust is not an adequate representative in challenging this provision because it has no policy on what to do with retained funds, and that, as a result of this, it is impossible to determine whether ARC Community Trust intends to use retained funds in ways that are contrary to the interest of the members of the proposed class.  (Defs.' Mem. of Law in Opp'n 16.)  This argument fails.

The mere fact that ARC Community Trust does not have a policy on the use of retained funds is insufficient to create a conflict between ARC Community Trust and the members of the proposed class.  "To defeat the adequacy requirement of Rule 23, a conflict 'must be more than merely speculative or hypothetical.'"  Gunnells v. Healthplan Servs., 348 F.3d 417, 430 (4th Cir. 2003) (quoting 5 Moore's Federal Practice § 23.25(4)(b)(ii) (2002)); see also In re Playmobil Antitrust Litig., 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998) ("Courts do not require the representative plaintiff to be the best of all possible plaintiffs . . . .")  (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 366 (1966)).[16]  Thus, the fact that ARC Community Trust does not

---

[15] The fifty-percent payback provision provides as follows:

> The trust shall provide . . . [t]hat, upon the death of the beneficiary or upon the earlier termination of the trust, the department and any other state that provided medical assistance to the beneficiary must be reimbursed from the funds remaining in the trust up to an amount equal to the total medical assistance paid on behalf of the beneficiary before any other claimant is paid:  Provided, however, That [sic] in the case of an account in a pooled trust, the trust shall provide that no more than fifty percent of the amount remaining in the beneficiary's pooled trust account may be retained by the trust without any obligation to reimburse the department.

62 Pa. Stat. Ann. § 1414(b)(3).

[16] The Court notes additionally that ARC Community Trust has a sound reason for not having a policy on the use of retained funds:  Given the pendency of this litigation and the uncertain application of Section 1414, ARC Community Trust does not know how much of the remainder it is legally allowed to keep.

-51-

have a policy on the use of retained funds does not disqualify it or its members from adequately representing the members of the proposed class.

               ii.        Adequacy of the Family Trust and Its Account Holders

It is undisputed that the Family Trust made charitable contributions to non-trust beneficiaries from trust remainders and allowed funds from Zachary Lewis's trust to be used to pay for upgrades to the Lewis family's new home without taking a security interest in favor of Zachary Lewis. (Stips. ¶¶ 32-36.) Defendants contend that these two disbursements violate federal and state law and that, as a result of them, the Family Trust and its members cannot adequately represent the class.[17] (Defs.' Mem. in Opp'n to Pls.' Mot. for Class Certification at 7-12.)

This argument raises significant concerns. Without determining whether these actions on the part of the Family Trust violate state or federal law, the Court concludes that they raise a significant likelihood of a conflict between the Family Trust and members of the proposed class. For example, the Family Trust's practice of making charitable donations out of retained funds may conflict with the interest of trust beneficiaries in having those retained funds used to subsidize the cost of trust administration and reduce administrative fees. In light of this, the Court concludes that the Family Trust and its members do not meet the adequacy requirement

---

[17] Defendants make a related additional argument that all of the named plaintiffs fail the adequacy prong because they "signed onto a brief supporting the Family Trust on at least two issues where the interest of the Family Trust are in direct conflict with the interests of absent class members." (Defs.' Sur-Reply Mem. in Opp'n, at 2.) This second argument is rejected, as defendants have cited no authority for the proposition that a party's representation can be found inadequate on the basis of legal arguments made in the briefs. Cf. Alvarado Partners, L.P. v. Mehta, 130 F.R.D. 673, 676 (D. Colo. 1990) (speculation on possible differences among class members regarding litigation strategy did not cause named representative to be inadequate).

are disqualified from representative status.  This conclusion is without practical effect, however, as ARC Community Trust and its members are adequate representatives of the proposed class. See Grasty v. Amalg. Clothing & Textile Workers Union, 828 F.2d 123, 128 (3d Cir. 1987) ("[I]n most cases as long as one of the representatives is adequate, the adequacy of representation requirement is met.") (overruled in part on other grounds by Reed v. United Transp. Union, 488 U.S. 319 (1989)).

Thus the adequacy prong is satisfied.

5.  *Requirements of Rule 23(b)(2)*

Plaintiffs seek certification under Rule 23(b)(2), which applies when "[t]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[18]  In this case, plaintiffs seek declaratory and injunctive relief barring the enforcement of Section 1414 against the entire class.  The Third Circuit has explained that the requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." Baby Neal ex rel. Kanter v. Casey, 43 F.3d 48, 58-59 (3d Cir. 1994) (citation omitted).

There are numerous cases certifying classes where plaintiffs have challenged statutes affecting social security benefits and medical assistance.  See, e.g., Califano v. Yamasaki, 442 U.S. 682, 699-701 (1979); see also 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay

---

[18]  At one point in the briefs, plaintiffs argue that if they cannot certify a class under Rule 23(b)(2) the Court should certify one under Rule 23(b)(1)(A).  (See Plaintiffs' Reply Mem. in Support of Class Certification at 35.)  Rule 23(b)(1)(A) applies when "prosecuting separate actions by or against individual class members would create a risk of [ ] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  However, it is not necessary to address this argument because plaintiffs' class can more appropriately be certified under Rule 23(b)(2).

-53-

Kane, <u>Federal Practice and Procedure</u> § 1775, at 73 (2005) ("Rule 23(b)(2) . . . has been used extensively to challenge the enforcement and application of complex statutory schemes, such as suits involving the award or termination of benefits under the social security act."). This case meets the requirements of Rule 23(b)(2), and the Court thus grants plaintiff's motion to certify a class.

### 6. *Scope of the Proposed Class*

Without citing any case law or any provision of the Federal Rules of Civil Procedure, defendants contend that the proposed class is too broad and that trustees should not be included in the class "because they are not directly affected by 62 P.S. § 1414." Defendants do not explain what they mean by this and cite no authority for the proposition that a party has to be "directly affected" to be included in a class. The Court rejects this argument. For the reasons described in Section III, <u>supra</u>, the Court concludes that the trustees have a significant stake in this litigation.[19]

### 7. *Claims Subject to Class Treatment*

A court certifying a class "must include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment." <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 297 (3d. Cir. 2006) (citation omitted).

This case involves plaintiffs' challenges to Section 1414 and related requests for declaratory and injunctive relief. All such claims are subject to class treatment.

---

[19] Despite defendants' contention, Section 1414 does directly regulate the behavior of trustees. <u>See, e.g.</u>, Section 1414(c) ("If at any time . . . the trustee refuses without good cause to make payments from the trust for the special needs of the beneficiary . . . the department or other public agency may petition the court for an order terminating the trust.")

### 8.   *Appointment of Class Counsel*

Rule 23(g) specifies factors that must be considered in appointing class counsel:  "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Additionally, a court must ensure that "[c]lass counsel [will] fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(4), and "may consider any other matter pertinent to counsel's ability" in order to do so.  Fed. R. Civ. P. 23(g)(1)(B).

The factors under Rule 23(g) are all met in this case.  Plaintiffs' counsel have done considerable work identifying and investigating the claims underlying the action, and have significant experience handling class actions and cases involving similar claims.[20]  Counsel have demonstrated sufficient knowledge of the applicable law, and have committed considerable time and resources to representing plaintiffs' interests.  In light of this, the Court appoints Stephen Feldman and Karen Guss as class counsel.

## VIII.   CONCLUSION

For the foregoing reasons, the Court rules (1) that the no-more-restrictive rule does apply to the trusts at issue; (2) that subsections (b)(1), (b)(2), (b)(3)(ii), (b)(3)(iii), and (c) of Section 1414 violate the no-more-restrictive rule of 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and are in

---

[20] Stephen Feldman has been appointed class counsel once in this district and once in the District of New Jersey.  (Curriculum Vita, Ex. A to Pls.' Mot. for Class Certification.)  He has over 30 years working on health law and elder law issues.  (Id.)  Karen R. Guss, the other attorney representing plaintiffs, also has substantial relevant experience.  (Curriculum Vita, Ex. B to Pls.' Mot. for Class Certification.)

conflict with 42 U.S.C. § 1396p(d)(4)(C), as a result of which they are preempted; and (3) that

subsections (a), (b)(3)(i), (b)(4), (d), (e), and (f) of Section 1414 are severable under state law

and remain in effect.   The Court grants plaintiffs' motion for class certification and certifies a

class consisting of the following:

> All disabled individuals who are, or who will become, eligible for Medical
> Assistance and for whom pooled special needs trust accounts that comply
> in all respects with the federal Medicaid Act were established on or after
> January 1, 2000, or will be established in the future, but who have been or
> will be denied Medical Assistance, or who are subject to termination of
> their Medical Assistance benefits, as a result of the application of Section
> 1414, as well as trustees of pooled special needs trusts holding such
> accounts and other persons acting in a representative capacity on behalf of
> such disabled individuals.

Stephen Feldman and Karen Guss are appointed as class counsel.   Appropriate orders follow.